735 F.2d 201
 17 Ed. Law Rep. 1047
 MIAMI UNIVERSITY ASSOCIATED STUDENT GOVERNMENT, Anthony M.
Brant, Michelle E. Huffer, Richard H. Korengold, Gregory E.
Lweandowski, Jeffry E. Schalk, Thomas F. Smock, Steven P.
Subar, and Barrie Sutton, Plaintiffs-Appellants,
v.
Dr. Phillip R. SHRIVER, William G. Liggett, Wayne J. Albers,
Donald C. Fanta, John C. Jurgensen, Barry J. Levey, Kent B.
McGough, Charles S. Mechem, Jr., Ara Parseghian, and John
Weld Peck, Members of the Board of Trustees University,
Defendants-Appellees.
 No. 82-3492.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 19, 1984.
Decided May 31, 1984.
 
 James S. Irwin, James E. Michael (argued), Hamilton, Ohio, for defendants-appellees.
 Bruce A. Campbell (argued), Columbus, Ohio, for plaintiffs-appellants.
 Before MARTIN, CONTIE and WELLFORD, Circuit Judges.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 The issue in this case is whether Miami University has the authority to prevent its students from operating private automobiles in and around its Oxford, Ohio campus.
 
 
 2
 Since 1919, Miami University has had a "no-car" policy for undergraduate students enrolled at its Oxford, Ohio campus. Unless a student fits into one of several exceptions, he or she may not operate an automobile in the Oxford area. The Board of Trustees defines the "Oxford area" to include both the university campus itself and the City of Oxford which surrounds the campus. The purpose of the rule, according to the University's president, is to ensure "a sense of community, a sense of involvement, a sense of participation in campus organizations, in campus dialogues ... rather than an exodus away from the campus, away from that learning environment taking place nightly, every weekend, as we have seen in so many places." The rule is enforced by campus security personnel and about twenty "student security aides" who issue violation tickets both on and off campus. Repeated violations of the "no-car" rule can lead to suspension. Approximately 1,800 of the 15,000 students at the Oxford campus are currently allowed to have cars because they come within one of the exceptions to the rule--handicapped students, married students, students over twenty-three, commuting students, and the like.
 
 
 3
 In 1981, the Miami University Associated Student Government filed suit in federal court under 42 U.S.C. Sec. 1983 to enjoin enforcement of the rule. The association challenged the rule on two grounds: (1) it claimed that the rule violated its members' associational, travel and privacy rights as guaranteed by the fourteenth amendment of the United States Constitution and (2) it claimed that the Board of Trustees lacked authority under state law to promulgate and enforce rules of conduct unrelated to academic performance off the Miami campus. After a short trial, the district judge found for the defendants and dismissed the case. In his opinion, the trial judge discussed at length the association's constitutional arguments but did not address the state law issues raised by the student government association.
 
 
 4
 It is a well-established principle that the federal courts should not decide a constitutional question if there is some other ground upon which to dispose of the case. See, e.g., Hagans v. Lavine, 415 U.S. 528, 546 n. 12, 94 S.Ct. 1372, 1384 n. 12, 39 L.Ed.2d 577 (1974); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). The Supreme Court recently reaffirmed this principle in Escambia County v. McMillan, --- U.S. ----, 104 S.Ct. 1577, 80 L.Ed.2d 36 (1984). In this voting rights case the federal court of appeals had determined that a county's at-large voting system diluted black voting strength in violation of the fourteenth amendment. In order to avoid a potentially unnecessary decision on the constitutional question, the Supreme Court remanded the case to the court of appeals to determine whether the at-large system violated the Voting Rights Act of 1965.
 
 
 5
 In our case, the plaintiffs make a strong argument that Ohio law does not grant the Miami Board of Trustees authority to establish and enforce rules of conduct for students off-campus. The statute which grants the Trustees their police authority, Ohio Rev.Code Sec. 3345.21, reads as follows:
 
 
 6
 Authority to maintain law and order on campus.
 
 
 7
 The board of trustees of any college or university which receives any state funds in support thereof, shall regulate the use of the grounds, buildings, equipment, and facilities of such college or university and the conduct of the students, staff, faculty, and visitors to the campus so that law and order are maintained and the college or university may pursue its educational objectives and programs in an orderly manner.
 
 
 8
 The board of trustees of each such college or university shall adopt rules for the conduct of the students, faculty, visitors, and staff, and may provide for the ejection from college or university property, suspension or expulsion of a person who violates such regulations. All such rules shall be published in a manner reasonably designed to come to the attention of, and be available to, all faculty, staff, visitors, and students.
 
 
 9
 The board of trustees shall provide for the administration and enforcement of its rules and may authorize the use of state university law enforcement officers provided for in section 3345.04 of the Revised Code to assist in enforcing the rules and the law on the campus of the college or university. The board of trustees, or appropriate officials of such college or university when the authority to do so has been delegated by the board of trustees, may seek the assistance of other appropriate law enforcement officers to enforce the rules and to enforce laws for the preservation of good order on the campus, and to prevent the disruption of the educational functions of the college or university.
 
 
 10
 The rules of the board of trustees shall not restrict freedom of speech nor the right of persons on the campus to assemble peacefully.
 
 
 11
 (emphasis added). As noted above, the district judge did not address the merits of plaintiff's state law claim in his decision. Accordingly, we remand this case for express consideration of the state law issues in the possibility that this may avoid the need to decide the difficult constitutional questions at issue.
 
 
 12
 We note that on remand the district judge will have to consider what effect, if any, the recent Supreme Court ruling in Pennhurst State School & Hospital v. Halderman, --- U.S. ---- 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), will have on his ability to order the Miami Board of Trustees to conform its conduct to his interpretation of Ohio law. In Pennhurst, the Court ruled that the eleventh amendment and principles of sovereign immunity precluded the federal courts from instructing "state officials on how to conform their conduct to state law." Id. 104 S.Ct. at 911. Our own analysis of Pennhurst suggests that it may not provide the Board of Trustees with immunity. State officials are not entitled to eleventh amendment immunity if they are acting ultra vires, that is without proper authority. While Pennhurst narrowed somewhat the scope of the ultra vires doctrine, it also made clear that the doctrine still applies when an official acts "without any authority whatever." Id. 104 S.Ct. at 908 n. 11, quoting from Florida Dept. of State v. Treasure Salvors, Inc., 458 U.S. 670, 697, 102 S.Ct. 3304, 3321, 73 L.Ed.2d 1057 (1982). In Pennhurst, a suit against the administrators of a state mental hospital, the Court held that ultra vires did not apply because the defendant state officials clearly had the authority to provide mental health services. The only question in that case was whether the services being provided were adequate.
 
 
 13
 In our case, on the other hand, the student association argues that the Board of Trustees is without any authority whatever to enforce a "no-car" policy off the grounds of the Miami campus. If the district judge accepts this proposition on remand, then Pennhurst will not prevent him from ordering the Board to conform its conduct to the dictates of Ohio law.
 
 
 14
 The decision of the district court is reversed and the case remanded for further proceedings consistent with this opinion.