**Darwin D. McGLUMPHY, etc., et al., Plaintiffs,**

v.

**FRATERNAL ORDER OF POLICE, etc., et al., Defendants.**

No. C85–2279A.

United States District Court, N.D. Ohio, E.D.

April 16, 1986.

Thomas Freeman, Michael A. Tramonte, Tramonte, Kot, Davis & Lowry, Akron, Ohio, for plaintiffs.

Douglas J. Powley, Asst. Director of Law, Akron, Ohio, Robert M. Phillips, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

Before the Court are the motions of the defendants, Fraternal Order of Police (F.O. P.), Robert Offret, and Howard Fallon,[1] and the City of Akron, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiffs, Darwin McGlumphy, Russell Murphy, David Fuller, Stephen Geiger, John Smith, Sloan Heare, Dale Stoltz, and Jim McFarland, have filed a response to the defendants' motions and have also filed a motion for summary judgment. Also before the Court is the City of Akron's motion for summary judgment against the F.O.P., Offret, and Fallon, on its cross-claim for indemnity.[2]

### I.

The plaintiffs are patrolmen employed by the Akron Police Department.[3] The plaintiffs are not members of the Fraternal Order of Police, Akron Lodge No. 7 (F.O. P.), however, the "employee organization" that acts as the "exclusive representative" of the police patrolmen.[4] As the exclusive representative, the F.O.P. is entitled to bargain collectively with the public employer, in this situation the City of Akron. *See* Ohio Rev.Code Ann. § 4117.05 (Supp.1985). Although an entity designated as the exclusive representative of a bargaining unit

1. Offret is the president of the Akron Chapter of the Fraternal Order of Police, known as Lodge No. 7, and Fallon is its first vice president.

2. The city has filed a motion requesting the Court to notify the Ohio Attorney General that an Ohio statute is under constitutional attack, as required under 28 U.S.C. § 2403(b). No notice is required, however, because the plaintiffs are not challenging the constitutionality of § 4117.-09(C) of the Ohio Revised Code, but rather the manner in which the F.O.P. is implementing the statute. The issue is whether the procedure currently provided to the plaintiffs by the F.O.P. comports with the requirements of the first amendment. Indeed, the statute specifically requires the F.O.P. to implement a procedure "which conforms to federal law." Ohio Rev. Code Ann. § 4117.09(C) (Supp.1985). The motion is denied.

3. The plaintiffs all are members of the Akron Police Patrolman's Association (APPA).

4. An employee organization becomes the exclusive representative either by being certified by the state after being selected by a majority of the employees in a board-conducted election, or by filing a request with the public employer accompanied by evidence that a majority of the public employees support the request. Ohio Rev.Code Ann. § 4117.05(A) (Supp.1985).

represents all of the employees within the bargaining unit, all members within the bargaining unit are not required by law to become members of the entity designated as the exclusive representative. *See id.* § 4117.09(C). The statute provides, however, that the collective bargaining agreement entered into between an employer and a bargaining organization contain a provision requiring "that the employees in the unit who are not members of the employee organization pay to the employee organization a fair share fee." *Id.* In this way, the statute resolves the "free rider" problem that arises when nonunion employees benefit from the union's collective bargaining activities but avoid contributing a portion of the collective bargaining expenses. *See Abood v. Detroit Board of Education,* 431 U.S. 209, 224, 97 S.Ct. 1782, 1793–94, 52 L.Ed.2d 261 (1976).

Where a fair share system is implemented, the statute provides that

> [a]ny public employee organization representing public employees pursuant to Chapter 4117. of the Revised Code shall prescribe an internal procedure to determine a rebate, if any, for nonmembers which conforms to federal law, provided a nonmember makes a timely demand on the employee organization ... The internal rebate procedure shall provide for a rebate of expenditures in support of partisan politics or ideological causes not germaine to the work of employee organizations in the realm of collective bargaining.

Ohio Rev.Code Ann. § 4117.09(C) (Supp. 1985). It is the rebate procedure implemented by the F.O.P. pursuant to the collective bargaining agreement with the City of Akron that the plaintiffs contest in their lawsuit.

## II.

In Count I of the complaint, the plaintiffs allege a violation of 42 U.S.C. § 1983, claiming that the rebate procedure estab-lished by the F.O.P. is constitutionally insufficient. The plaintiffs allege that the defendant F.O.P. is using fair share dues collected from non-F.O.P. members for·purposes unrelated to collective bargaining, contract administration, and grievance adjustment, and that this conduct amounts to an involuntary loan in violation of the right to free association guaranteed by the first amendment, and the right to due process liberty protected by the fourteenth amendment. The plaintiffs request a determination from this Court that the F.O.P.'s rebate system is unconstitutional. The plaintiffs also request the Court to order the F.O.P. to establish a rebate procedure that provides for a timely and proper return of those portions of the fair share fee wrongfully retained by the defendants.

In Count II, the plaintiffs allege a cause of action based on common law breach of contract.[5] The plaintiffs claim that the F.O.P. has failed to establish an internal procedure to determine the rebate of fair share fees as required under the terms of the collective bargaining agreement. The plaintiffs also allege a violation of a clause in the collective bargaining agreement prohibiting the F.O.P. from discriminating against individuals who are not members of the F.O.P.

## III.

On April 17, 1984, F.O.P. Lodge No. 7 and the City of Akron entered into a collective bargaining agreement. Defendant F.O.P.'s Exhibit D. The agreement allows the city to deduct union dues from members of the bargaining unit who signed payroll authorization deduction cards. The agreement further provides that "all sworn police officers who are not members of the FOP shall become and remain members in good standing of the FOP or shall pay to the FOP a fair share fee equal to the regular and usual dues of an FOP mem-

---

**5.** The plaintiffs are, in essence, third party beneficiaries of the contract negotiated by the F.O.P., the exclusive representative of all the Akron

Police Department patrolmen, with the City of Akron.

ber."[6] In addition, "[t]he FOP shall prescribe an internal procedure to determine a rebate, if any." The F.O.P. designated the fair share fee for nonmembers at its monthly meeting in July of 1984. Defendant F.O.P.'s Exhibit E. The F.O.P. also established a rebate procedure through the following language in a letter memorializing the provisions of the collective bargaining agreement regarding the establishment of a fair share and rebate system:

> This will serve as notice that F.O.P. Akron Lodge No. 7 has established a fair-share fee of $7.93 per month. In the future, the fair-share amount shall be increased equal to the amount of increase in the pay range 80, step "F", hourly wage. The fair-share fee is to be deducted by payroll deduction from all nonmembers of the bargaining unit as prescribed in the agreement. This amount will not exceed twelve (12) monthly installments per year and will not exceed the length of the agreement, unless extended by mutual agreement. *F.O.P. Akron Lodge No. 7 has established a rebate committee to maintain a review of expenditures for the agreement in effect.* THE AGREEMENT between the City Of Akron and F.O.P. Akron Lodge No. 7, dated April, 1984, Article II, C–2 reads, "The F.O.P. shall prescribe an internal procedure to determine a rebate, if any". *THE REBATE COMMITTEE will report annually in the month of December at the regular F.O.P. meeting. This report will reflect expenses related to the costs of negotiations and maintenance of the agreement. THE REBATE COMMITTEE shall be selected as prescribed under the By-Laws and Constitution of the F.O.P. Akron Lodge No. 7, consisting of three (3) members.*

Defendant F.O.P.'s Exhibit F (emphasis added).

The plaintiffs first registered their objections to the fair share fees assessed against them on May 15, 1984, when certain non-F.O.P. members requested the F.O.P. to provide them with an accounting of various expenses unrelated to collective bargaining. *See* McGlumphy Deposition, Exhibit 2 (Letter from Darwin McGlumphy to Robert Offret). On June 20, 1984, McGlumphy and other non-F.O.P. members filed a complaint with the S.E.R.B. requesting review of the rebate determination system employed by the F.O.P. Defendant F.O.P.'s Exhibit B. On November 15, 1984, the F.O.P. conducted a meeting of the Fair Share Committee. *See* Defendant F.O.P.'s Exhibit G. A second meeting of the committee was conducted on December 17, 1984. It appears that no written notice of the meeting was provided to non-F.O.P. members, although plaintiff Murphy received oral notice of the meeting, and the plaintiffs were represented at the fair share committee meeting. *See* Plaintiffs' Exhibit D (McGlumphy Affidavit at 2). At the first meeting, the F.O.P. determined that the amount of the rebate of the plaintiffs' pre-paid fair share dues for the period from April of 1984 to December of 1984 was $16.49. *See* Defendant F.O.P.'s Exhibits J–L. The plaintiffs refused to accept the proffered rebate amount, and several plaintiffs sent letters to the F.O.P. requesting a complete financial breakdown of F.O.P. expenses, and specifically those expenses directed toward negotiations. The F.O.P. response was to indicate that the plaintiffs may inspect the books at any time.

The rebate "procedure" cited by defendants F.O.P. and City of Akron constitutes three separate sheets of paper, which contain writing and figures. Exhibit K, a photocopy of a piece of lined notebook paper, purports to be a breakdown of F.O.P. expenses accrued for an undesignated year, ostensibly for 1984, and includes such handwritten headings as "negotiations," "administrative, grievances," "collective bargaining," "newsletter," and "office exp." At the bottom of Exhibit K are two

---

6. This provision applies to all new officers as well. Deduction of fair share fees from non-F.O.P. members' paychecks does not require authorization and is automatic. Ohio Rev.Code Ann. § 4117.09(C) (Supp.1985).

circled figures: "$15,832.50" and "$15,-813.43." Defendant F.O.P.'s Exhibit J, which contains figures noted on paper exhibiting the City of Akron letterhead, indicates in handwritten language: "fair-share fee to run 1 Dec. to 1 Dec. each year." Exhibit J indicates that some $15,368.02 was spent from April 1 to November 1 of 1984, and that some $650.41 was spent from Nov. 1 to Dec. 1 of 1984, although it is unclear what expenses are included in those figures.[7]

The defendants do not articulate in their pleadings the method by which they arrived at the fair share fee. It appears that the F.O.P. took the amount it allegedly spent on collective bargaining expenses from April 1 to Nov. 1, and divided it by 409, the number of officers on the payroll for that period. This figure represents the per officer expense figure for April 1 through Nov. 1. The defendants also took the amount spent on collective bargaining expenses from November 1 to December 1 of 1984, $650.41, and divided it by 450, the number of officers on the payroll for that period. That figure represents the per officer expense figure for the month of November. The per officer figures were added together to arrive at the total amount of funds expended on activities related to collective bargaining from April 1 through December, per officer. Each police officer is liable for this amount regardless of his or her affiliation with the F.O.P.; this amount is the fair share amount required to be contributed by non-F.O.P. members. The rebate amount is figured by subtracting the fair share amount from the amount prepaid by non-F.O.P. members in pre-paid dues. Under the F.O.P. scheme, non-F.O.P. members pre-pay an amount identical to the amount of dues paid by F.O.P. members. The F.O.P. collected the following amounts as pre-paid fair share dues from non-F.O.P. members' paychecks, from April, 1984 to March, 1985, $7.93 per month; for April, 1985, $8.27 per month; and from May, 1985 to date, $12.57 per month.

In May, 1985, the F.O.P. held a special dues assessment meeting to increase the monthly F.O.P. dues, at which time the dues were increased. In the summer of 1985, several of the plaintiffs filed grievances with the F.O.P., objecting to the dues increase because the fair share fee was tied directly to the amount of the members' dues. The grievances specifically alleged that funds from the increase in dues were being spent to purchase property for use exclusively by F.O.P. members.[8] *See* McGlumphy Affidavit (Exhibits 6, 9). The requests for resolution of the dues rebate problem through the grievance procedure were denied. *See id.* (Exhibits 7, 8, 10–13). The plaintiffs were informed that objections to rebate determinations were to be resolved by resort to the collective bargaining agreement, and not through the grievance procedures. In July of 1985, plaintiff McGlumphy again requested information regarding the breakdown of F.O.P. expenses, and again the request for information was denied. In August of 1985, the plaintiffs commenced the present lawsuit.

No rebate has been paid to any of the plaintiffs, although a rebate of $16.49 per non-F.O.P. member was offered after the meeting of the rebate committee in December of 1984. *See* Defendant F.O.P.'s Exhibit A (Affidavit of Robert Offret at 1); Defendant F.O.P.'s Exhibit J. In addition, Offret has attested that the F.O.P. established an interest bearing bank account in April of 1985 for the deposit of nonmember fair share fees. Beginning in April, 1985, all nonmember fair share fees have been deposited in that account, and an amount equal to previously collected fair share fees has also been deposited in the account.

---

7. The Court notes that the figure calculated in Exhibit K does not match the figure used in Exhibits J and L for the computation of the fair share fee. Further, the genesis of the $650.41 figure in Exhibits J and L, the amount spent from November 1 to December 1, is unclear.

8. In his affidavit, McGlumphy states that non-F.O.P. members do not have access to the F.O.P. lodge, the property the purchase of which allegedly necessitated a dues increase. *See* Plaintiff's Exhibit D (McGlumphy Affidavit at 2).

## IV.

### A.

The plaintiffs have alleged that the union's rebate procedure violates 42 U.S.C. § 1983.[9] Section 1983 encompasses three distinct due process inquiries. *See Wilson v. Beebe*, 770 F.2d 578, 584–86 (6th Cir.1985) (*en banc*); *accord Daniels v. Williams*, ––– U.S. –––, 106 S.Ct. 662, 670–78, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring). First, a § 1983 action is available to redress substantive due process violations of a specific constitutional guarantee. Second, a § 1983 action is available to redress substantive due process claims predicated on intentional conduct that "shocks the conscience." Third, a § 1983 action lies to provide a plaintiff relief when procedural due process violations deprive a plaintiff of life, liberty, or property without appropriate procedural safeguards.[10]

The Court finds that the rebate procedure instituted by the F.O.P. violates the substantive first amendment rights of nonunion members forced to contribute fair share dues under the Ohio statute. Implicit in the substantive protections engendered by the first amendment is the requirement that adequate procedures and safeguards exist to prevent substantive violations. *See Chicago Teachers Union v. Hudson*, ––– U.S.–––, 106 S.Ct. 1066, 1074 & n. 12, 89 L.Ed.2d 232 (1986); *see also Southeastern Promotions, Ltd. v. Con-*

*rad*, 420 U.S. 546, 558–62, 95 S.Ct. 1239, 1246–48, 43 L.Ed.2d 448 (1975) (prior restraints of speech only constitutional if accompanied by appropriate procedural safeguards). A substantive first amendment violation occurs when the procedures implemented to effectuate a rebate of fair share dues expended on activities unrelated to collective bargaining, contract administration, and grievance procedures are so deficient as to result in a portion of the dues being used to support such unrelated activities. Having concluded that the rebate procedure violates the first amendment, the Court need not decide whether the procedure also violates the plaintiffs' procedural due process rights, or constitutes a substantive due process "shocks the conscience" violation.

### 1.

In *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1976), the Supreme Court upheld the constitutionality of a collective bargaining agreement between an authorized bargaining representative for governmental employees and a public employer that included an agency shop provision requiring nonunion members to contribute service charges used for collective bargaining, contract administration, and grievance adjustment expenses. *Id.* at 232, 97 S.Ct.

---

**9.** The plaintiffs have also alleged a state breach of contract claim based on the collective bargaining agreement entered into between the F.O.P. and the city. The Supreme Court has repeatedly stated that federal courts should decide cases on narrow, nonconstitutional grounds if possible, even if those grounds arise out of state pendent claims. *Hagans v. Lavine*, 415 U.S. 528, 546, 94 S.Ct. 1372, 1383–84, 39 L.Ed.2d 577 (1974); *see Miami University Associated Student Government v. Shriver*, 735 F.2d 201, 203 (6th Cir.1984). Thus, if the Court is able to decide the plaintiffs' claim on the basis of the pendent state breach of contract claim, the Court may avoid reaching the constitutional claims raised under § 1983. The Court concludes, however, that the question whether the rebate system implemented by the union is a sufficiently internal and nondiscriminatory rebate procedure so as to comply with the provisions of the collective bargaining agreement de-

pends at least in part on the constitutional validity of the rebate procedure itself. As a result, a determination of the state law contract claim will not obviate analysis of the § 1983 claim.

**10.** The requisite state action for § 1983 purposes arises from the contractual relationship between the F.O.P. and the city based on the collective bargaining agreement. The color of state law requirement is satisfied when a private entity acts in concert with a public agency to deprive a person of constitutional rights. *Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187, at 1191; *see also Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820, 2824–25, 81 L.Ed.2d 758 (1984) (color of state law requirement satisfied by allegation of conspiracy between private person and government to deprive constitutional rights).

at 1798. The Court limited its holding, however:

> We do not hold that a union cannot constitutionally spend funds for the expression of political views, on behalf of political candidates, or toward the advancement of other ideological causes not germane to its duties as collective-bargaining representative. Rather, the Constitution requires only that such expenditures be financed from charges, dues, or assessments paid by employees who do not object to advancing those ideas and who are not coerced into doing so against their will by the threat of loss of governmental employment."

*Id.* at 235–36, 97 S.Ct. at 1800.

Subsequently, in *Ellis v. Brotherhood of Railway, Airline, and Steamship Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), the Court held that the union's rebate procedure, which exacted full dues from the nonunion employees and used those monies until subsequently refunding months later the amounts of those dues used for purposes unrelated to collective bargaining, contract administration, and grievance adjustment, violated the Railway Labor Act. The Court noted that the availability of easily implemented alternative rebate procedures, including advance reduction of dues or interest bearing escrow accounts, outweighed any administrative convenience gained by use of the union's rebate procedure. *Id.* at 444, 104 S.Ct. at 1890. "Given the existence of acceptable alternatives, the union cannot be allowed to commit the centers' funds to improper uses even temporarily. A rebate scheme re-

duces but does not eliminate the statutory violation." *Id.*[11] Notably, the Court did not reach the question of the procedure's constitutional adequacy.

### 2.

Two circuit courts have ruled on the constitutional ramifications of fair share contributions and rebate programs implemented pursuant to state law in the public sector union shop context. In *Robinson v. New Jersey*, 741 F.2d 598 (3d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1228, 84 L.Ed.2d 366 (1985), the Third Circuit rejected the plaintiffs' argument that the rebate procedure violated the first amendment, but agreed that constitutional violations might result from inadequate "due process protections in the assessment of the withholding and the adequacy of the post-withholding return systems." *Id.* at 612. The court admitted that the rebate procedure implemented by the unions might deny a nonunion member the use of his or her funds to support other causes, but noted that the Supreme Court has indicated that the temporary deprivation of money for use in the expression of ideas, as opposed to the temporary deprivation of a forum for use in the expression of ideas, is of lesser first amendment concern. To the extent any harm occurs from the deprivation of funds, the court observed that adequate post-deprivation procedures may remedy an otherwise unconstitutional taking. Thus, the only constitutional violation inherent in a rebate system arises out of the adequacy of the notice and post-deprivation procedures. *Id.* at 611.[12]

---

**11.** The Court then addressed the specific expenditures alleged by the plaintiffs to constitute improper use of nonunion employee's funds. The plaintiffs argued that the use of their funds for conventions, social activities, publications, union organizing, general litigation, and death benefits payments constituted illegal uses of their contributions. The Court first analyzed the expenditures to determine whether the Railway Labor Act precluded plaintiffs from contributing to those activities, and held that only the spending of nonunion funds on union organizing and general litigation expenses clearly violated the statute. The Court then considered the constitutional implications of the expenses allowed by the statute. In ruling on the conven-

tion, social activities, and publications expenses, the court held that the expenses were within the acceptable range of expenses relating to collective bargaining. The Court did not reach the issue of death benefits payments, holding the issue to be moot. *Ellis,* 466 U.S. at 448–57, 104 S.Ct. at 1892–97.

**12.** The Third Circuit did not reach the question of the constitutional adequacy of the rebate procedures attacked by the plaintiffs, as it remanded the case to the district court for a determination of that issue. The district court had previously found the state statute unconstitutional on its face, and thus had not considered the constitutionality of specific procedures.

The Seventh Circuit has taken a more expansive view of the constitutional deprivations created by rebate systems in union shop situations in *Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187 (7th Cir.1984), *aff'd*, —— U.S. ——, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). *Hudson* involved a collective bargaining agreement between the Chicago Board of Education and the Chicago Teachers Union that authorized the deduction of "proportionate share" payments from nonunion employees' paychecks. The proportionate fee was determined by identifying the percentage of the union's income for the previous year attributable to expenses unrelated to collective bargaining and contract administration, and designating the nonunion members' fees to be the regular union members' fee reduced by that percentage. *Hudson*, —— U.S. at ——, 106 S.Ct. at 1069–71. The union also established a three-step procedure for considering objections by nonmembers. After receiving a written objection, the Union's Executive Committee reviewed a nonunion members' objection. If the objection was denied, and the objector filed a timely appeal, the objector received a personal hearing before the committee. If the objector pressed the dispute further, the objection was subject to arbitration, with the arbitrator selected by the union. *Id.; Hudson*, 743 F.2d at 1194.

The circuit court held that the first amendment right of freedom of association protects a nonunion employee from having his contribution to the union used to support political or ideological activities unrelated to collective bargaining. The circuit court noted the close relationship between substance and procedure in first amendment free expression cases, and held that rebate procedures that might possibly result in nonunion members' funds being used to support activities unrelated to collective bargaining violate substantive first

amendment rights of freedom of association: "Just the danger (as distinct from actuality) of depriving people of the freedom of expression guaranteed by the first amendment has led courts to invalidate procedures that created the danger." *Id.* at 1192.

A majority further held that fourteenth amendment due process protects a nonunion employee from having contributed funds used to support *any* activity unrelated to collective bargaining, not only those activities of a political or ideological nature.[13] The majority identified the due process liberty right as the liberty inherent in freedom of association. The majority viewed due process freedom of association as broader than first amendment freedom of association, because the due process right is not restrained by the first amendment's central purpose of protecting religious, political, and other ideological expression. In the majority's view, the fourteenth amendment requires a procedure to prevent nonunion members' funds from supporting any activity unrelated to collective bargaining expenses, not simply activities that concern politics or ideology.

3.

The Supreme Court, in *Chicago Teachers Union v. Hudson*, —— U.S. ——, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), affirmed the decision of the Seventh Circuit in *Hudson*. The Court held that the union's scheme for preventing the fair share dues of nonmembers from subsidizing union activities unrelated to the negotiation and administration of the collective bargaining agreement was constitutionally insufficient. The Court based its holding on the plaintiff's first amendment claims, and did not reach the plaintiff's procedural due process claims based on deprivation of liberty and property. *Id.* at 1075 n. 13. Implicit in the Court's first amendment analysis, however, is a recognition that the protection of first

---

**13.** The concurring opinion agreed with the majority that procedures allowing the use of nonunion contributors' funds for political and ideological activities unrelated to collective bargaining violate the first amendment, but did not agree that the fourteenth amendment protects such employees from having their contributions used for activities unrelated to collective bargaining but not constituting political and ideological activities. *Id.* at 1199 (Flaum, J., concurring).

amendment interests necessitates the existence of certain procedural safeguards. *Id.* at 1074.

The Court delineated three procedural safeguards that must be present in any rebate scheme designed to prevent subsidization by nonunion members of activities unrelated to collective bargaining, contract administration, and grievance adjustment. First, the rebate scheme must ensure that dissenters' funds are not used, even temporarily, to support unrelated activities; "[a] forced extraction followed by a rebate equal to the amount improperly expended is thus not a permissible response to the nonunion employees' objections." *Id.* at 1075. Second, the employee must receive adequate information about the basis of the proportionate fee, because "[l]eaving the nonunion employees in the dark about the source of the figure for the agency fee...does not adequately protect the careful distinctions drawn in *Abood.*" *Id.* at 1076. Third, the rebate scheme must "provide for a reasonably prompt decision by an impartial decisionmaker...[because] the nonunion employee...is entitled to have his objections addressed in an expeditious, fair, and objective manner." *Id.*

### B.

The F.O.P.'s rebate procedure does not provide the procedural safeguards outlined by the Supreme Court in *Hudson.* First, the rebate scheme does not provide adequate information to the nonmembers regarding the basis for the fair share fees. The Supreme Court indicated in *Hudson* that "adequate disclosure surely would include the major categories of expenses, as well as verification by an independent auditor." *Id.* at 1076 n. 18. The notice contemplated by due process is notice not that a rebate procedure exists, but rather notice of the steps in the rebate process, the method by which the rebate is established, the enumeration of the amounts and categories of expenses incurred by the union in its daily operations, and full disclosure to all contributors, especially nonunion contributors, of all union activities and expenditures. Absent such fair notice of the rebate procedures, the likelihood of nonunion members' funds being used to support political and ideological causes without assent increases, and the first amendment is violated.

The F.O.P.'s rebate system fails to provide even the most limited information about the basis for the determination of the rebate. *See supra* pp. 1077–1078. The breakdown of F.O.P. expenses is contained on a single sheet of notebook paper. The expenditures are virtually unlabeled. There is no indication of the amount or extent of the allegedly noncollective bargaining expenses, or the ratio of related expenses to unrelated expenses. The union does not employ an independent auditor to determine the legitimacy of the related expenses. The genesis of the figures used to compute the fair share fee is unclear, and the figures used do not match the ones arrived at in the union's computation of its expenses. *Compare* Defendant F.O.P.'s Exhibit K *to* defendant F.O.P.'s Exhibit J; *see supra* note 5. In short, the F.O.P.'s method of calculating the fair share fee is so haphazard and informal that it provides virtually no information to nonunion contributors, and effectively "leav[es] the nonunion employees in the dark about the source of the figure for the agency fee..." in violation of first amendment rights. *Hudson,* 106 S.Ct. at 1076.

A second deficiency in the F.O.P.'s rebate procedure is its failure to address objections in an "expeditious, fair, and objective manner." *Id.* In *Hudson,* both the Seventh Circuit and the Supreme Court invalidated the union's procedure because all three steps in the internal appeal mechanism were entirely controlled by the union, an interested party. The Seventh Circuit found that the union's control forestalled any capacity of the procedure to provide fairness in the initial stages of the rebate determination. *Hudson,* 743 F.2d at 1194–95. The Supreme Court agreed with the Seventh Circuit, but added the requirement that any objections be reviewed in a timely manner. Due process, then, requires "a

reasonably prompt decision by an impartial decisionmaker...." *Hudson*, 106 S.Ct. at 1076.

The F.O.P.'s procedure suffers from the same deficiencies as the one in *Hudson*. The procedure is clearly controlled totally by the union, *see supra* pp. 1077–1078, and provides less due process than the procedure declared insufficient by the Seventh Circuit and the Supreme Court in *Hudson*. Although the F.O.P.'s precise procedure is at best unclear, and at worst nonexistent, it appears that the union's rebate committee is charged with determining the existence and amount of any rebate. Dissatisfaction with that decision leaves the nonunion member with a right of appeal to the same committee. Further review requires filing a claim with the S.E.R.B.[14] The minimum requirement of procedural due process is that of a meaningful hearing, either before or after the constitutional deprivation. An entirely internal union review such as that provided by the F.O.P. is neither fair nor meaningful; some attempt at meaningful review should be available before a nonunion contributor must seek redress through administrative or judicial channels.

This Court also notes that these plaintiffs certainly have not received a speedy resolution of their objections. The F.O.P. procedure calls for a Rebate Committee to report its findings once per year in December. Under this system, an objection could conceivably lay unresolved for 12 months. In this case, the plaintiffs first objected to the fair share fee in May of 1984. The rebate committee first met in December of 1985. The procedure results in an unnecessary, and unconstitutional, delay in the resolution of objections.[15]

The third procedural requirement, that of preventing even temporary use of nonunion funds for noncollective bargaining contract purposes, has been cured by the establishment by the F.O.P. of an interest bearing escrow account into which the F.O.P. deposits collected fair share fees.[16] The Court notes that this is an appropriate first step toward alleviating the constitutional difficulties posed by the current F.O.P. rebate procedure. As the Supreme Court observed in *Hudson*, "the Union's self imposed remedy [of a 100% escrow] eliminates the risk that nonunion employees' contributions may be temporarily used for impermissible purposes...." *Hudson*, 106 S.Ct. at 1077. Still, as was the case in *Hudson*, the other constitutional flaws in the procedure still remain, and "[t]he appropriately justified advance reduction and the prompt, impartial decisionmaker are necessary to minimize both the impingement [on nonunion employees' first amendment rights] and the burden [of objection placed on the nonunion employee]." *Id.* The F.O.P.'s procedure unconstitutionally impinges the plaintiffs' first amendment rights notwithstanding the escrow account instituted by the F.O.P. For the foregoing reasons, the plaintiffs' motion for summary judgment is granted and the defendants' motions for summary judgment are denied.

## V.

▪ The City of Akron has filed a cross-claim for indemnity against the F.O.P.

14. Apparently, once the union rejects an objection, the dissenter's only recourse is application to the S.E.R.B., or appeal to the state court system. It is unclear whether the state statute requires an objector to exhaust S.E.R.B. administrative remedies before proceeding to state court; exhaustion is most likely necessary before proceeding in federal court, however.

15. The Court observes that the plaintiffs' complaint with the S.E.R.B., filed in June of 1984, has yet to be reviewed. Clearly, the plaintiffs have not received a "reasonably prompt decision by an impartial decision maker." The Supreme Court suggested that "extraordinarily swift judicial review," provided by the state,

would satisfy the Court's standard. *Hudson*, 106 S.Ct. at 1077 n. 20. The state has provided no special judicial review mechanism for objections to rebate determinations.

16. The Court believes, however, that the union's procedure, which establishes an automatically deductible fair share fee equal to union members' dues, will always result in an overpayment of fair share dues on the part of nonunion members. Although not constitutionally deficient due to the escrow, the F.O.P. should develop a more precise method for calculating the initial fair share deduction.

The city asserts that an express provision in the collective bargaining agreement entered into between the city and the F.O.P. indemnifies it from any liability for actions taken by the city pursuant to the agreement. The agreement provides:

> The FOP shall indemnify the City and hold it harmless against any and all claims, demands, suits or other forms of liability that may arise out of or by reason of any action taken by the City for the purpose of complying with the provisions of this Article.

*See* Defendant F.O.P.'s Exhibit D at 2 (Art. II, § D). The city deducted the fair share dues from the plaintiffs' paychecks as required under the terms of the collective bargaining agreement and Ohio statute. *Id.* (Art. II, § B); *see* Ohio Rev.Code Ann. § 4117.09(C) (Supp.1985). The deduction of fair share dues by the city is an act undertaken to comply with the agreement, and therefore is one for which the F.O.P. has agreed to indemnify the City against liability. Accordingly, the Court holds that the City of Akron is indemnified by the F.O.P. for its liability to the plaintiffs resulting from the deduction of the fair share fees from the plaintiffs' payroll. The Court thus grants the city's motion for summary judgment on the cross-claim against the F.O.P.

### VI.

The Supreme Court in *Hudson* affirmed the circuit court's reversal of the decision of the district court, and remanded the case for further proceedings consistent with the Court's opinion. The Supreme Court noted that "[i]n view of the fact that plaintiffs established a constitutional violation, moreover, the task of fashioning a proper remedy is one that should be performed by the District Court after all interested parties have had an opportunity to be heard." *Hudson*, 106 S.Ct. at 1077 n. 22. As this Court has indicated, the plaintiffs have established a constitutional violation. The appropriate remedy in this lawsuit first requires the implementation of constitutionally sufficient procedures for determining the appropriate rebate, and ultimately requires the F.O.P. to return to the plaintiffs that amount of the collected dues not used to support collective bargaining, contract administration, and grievance adjustment activities. The Court will retain continuing jurisdiction over this matter to insure that constitutional procedures are implemented, that the appropriate amount of rebate is determined, and that the appropriate rebate is refunded to the plaintiffs. Accordingly, the F.O.P. is ordered to file a proposed procedure with this Court by May 20, 1986. The plaintiffs will be provided the opportunity to respond to the proposed procedure, and the Court will retain ultimate authority for approving the F.O.P.'s proposed procedure.

### VII.

Accordingly, the Court grants the motion of the plaintiffs for summary judgment, and denies the motions of the defendants for summary judgment. The Court grants the motion for summary judgment of defendant City of Akron on its cross-claim for indemnity.

IT IS SO ORDERED.