Keith JORDAN, et al., Plaintiffs,

v.

CITY OF BUCYRUS, OHIO, Defendant.

No. 89–CV–1091.

United States District Court,
N.D. Ohio, E.D.

Jan. 2, 1991.

James R. Stokes, James A. Calhoun, Calhoun, Benzin, Kademenos & Heichel, Mansfield, Ohio, Glenn M. Taubman, National Right to Work Legal Foundation, Springfield, Va., for plaintiffs Jordan and Robinson.

Michael J. Angelo, Johnson, Balazs & Angelo, Cleveland, Ohio, for City of Bucyrus, Ohio.

Stewart R. Jaffy, Stewart Jaffy & Associates, Columbus, Ohio, for International Ass'n of Firefighters, Local 1120.

## ORDER

SAM H. BELL, District Judge.

Currently before the court are cross-motions for summary judgment filed by defendant and third-party plaintiff, the City of Bucyrus (hereinafter the City) and third-party defendant, the International Association of Firefighters, Local 1120 (hereinafter the Union), pursuant to Rule 56 of the Federal Rules of Civil Procedure. The present controversy deals with the issue of the Union's obligation to indemnify the City for the latter's liability to plaintiffs Keith Jordan and Paul Robinson (hereinafter plaintiffs), which liability has already been determined. This matter is to be resolved on the cross-motions as per this court's order of July 24, 1990.

## I. BACKGROUND

Plaintiffs, two non-union firefighters employed by the City, filed a civil rights action against the City on June 8, 1989. The complaint alleged that the City's collection of union fees from them violated their

First, Fifth and Fourteenth Amendment rights in that it failed to ensure that non-union employees are provided the pre-collection procedures required under the United States Constitution by *Chicago Teachers Union, Local No. 1, AFT, AFL–CIO v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986).[1]

On March 27, 1990, plaintiffs filed a motion for summary judgment against the City. On June 26, 1990, this court granted plaintiffs' motion, specifically finding that the City failed to ensure compliance with the pre-collection procedures required under *Hudson* and made applicable to public employers by *Tierney v. City of Toledo*, 824 F.2d 1497, 1504 (6th Cir.1987). *See Jordan v. City of Bucyrus*, 739 F.Supp. 1124 (N.D.Ohio 1990). This court also found that by letter dated March 2, 1989, plaintiffs requested that the City refrain from collecting the service fees from non-union members until certain problems had been corrected. This request was rejected. Further, on March 20, 1989, plaintiffs' counsel, Glenn M. Taubman, sent a letter to Robert C. Nott, Esq., the City's Law Director. In this letter, Mr. Taubman discussed the applicable law in detail and requested that the City deduct no further service fees until it had implemented constitutionally adequate pre-collection and rebate procedures, and that plaintiffs be sent immediate refunds for fees already taken. Nonetheless, the City continued to collect fees from plaintiffs, and did not cease to do so until July, 1989, after the lawsuit had been filed.

During the pendency of plaintiffs' motion for summary judgment, on April 13, 1990, the City filed a third-party complaint against the Union. The City claimed that under the collective bargaining agreement, the Union has the duty to indemnify the City for any liability imposed upon it in connection with a lawsuit arising out of the collection of service fees or dues, and that this duty extends to the City's obligation to pay attorney's fees as a result of a judgment rendered against it. In particular, the collective bargaining agreement provides as follows:

> The Union agrees to hold the City harmless in any suit, claim or administrative proceeding arising out of or connected with the imposition, determination or collection of service fees or dues, to indemnify the City for any liability imposed on it as a result of any such suit, claim or administrative proceeding, and to reimburse the City for any and all expenses incurred by the City defending any such suit, claim or administrative proceeding, including attorney fees and court costs.

Collective Bargaining Agreement, Article III, § 3.06 at p. 2.

This indemnification clause presents the sole issue confronting the court, *viz*, whether the Union is obligated to reimburse the City for its expenses undertaken in defending the action and its payment to plaintiffs of reasonable attorney fees. The City filed its motion for summary judgment on October 9, 1990, claiming that § 3.06 of the agreement indisputably entitles it to reimbursement from the Union. The Union's motion for summary judgment, filed on October 15, 1990, is based on the contention that, as a matter of law, § 3.06 is void and/or unenforceable as a violation of public policy.

## II. ANALYSIS

In summary judgment practice, the ultimate burden of demonstrating the existence of a genuine issue of material fact lies with the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Street v. J.C. Bradford and Co.*, 886 F.2d 1472 (6th Cir.1989). With regard to cross-motions for summary

---

1. The Court in *Hudson* delineated three procedural safeguards which must be present in any pre-collection or rebate scheme. The scheme must ensure that nonunion employees' funds are not used to support unrelated activities, that nonunion employees receive adequate information about the basis of the fee, and that a prompt opportunity to challenge the amount before an impartial decisionmaker is given. *See Hudson*, 475 U.S. at 310, 106 S.Ct. at 1077; *McGlumphy v. Fraternal Order of Police*, 633 F.Supp. 1074, 1082 (N.D.Ohio 1986).

judgment, each party has the equal burden of showing the absence of a genuine issue of material fact. Ordinarily, the fact that each side has moved for summary judgment does not by itself require the court to grant it to one side or the other. *See Begnaud v. White,* 170 F.2d 323 (6th Cir. 1948). However, as reflected by the order dated July 24, 1990, it has been provided that this matter is to be resolved on the motions. Consequently, the court will take the applicable facts and law into account in order to determine the indemnification issue as a matter of law.

The City's argument is based on the contention that the clear and unequivocal language of § 3.06 is a valid contractual clause and was made pursuant to and in compliance with Ohio Revised Code § 4117.09(c),[2] which has been upheld as constitutional. *See Gillespie v. Willard City Board of Education,* 700 F.Supp. 898, 902 (N.D.Ohio 1987). Further, argues the City, a service fee deduction for non-union employees runs solely to the benefit of the Union, and the indemnification clause is an enforceable agreement by the Union which represents the *quid pro quo* for the City's deduction of service fees. The City relies principally upon *McGlumphy v. Fraternal Order of Police,* 633 F.Supp. 1074 (N.D. Ohio 1986), wherein the court upheld an indemnification clause similar to the one before this court.

In its motion for summary judgment, the Union claims that § 3.06 is void as against public policy or, in the alternative, that it is unenforceable under the facts of this case.[3] The Union cites to *Stamford Board of Education v. Stamford Education Association,* 697 F.2d 70 (2d Cir.1982), in support of its argument.

Neither *McGlumphy* nor *Stamford* directly support the parties' respective positions. In *McGlumphy,* as in the case at bar, nonunion employees sued the Union and the City challenging the constitutional validity of the rebate procedure for fair share fee deductions. In granting the plaintiffs' motion for summary judgment, the court specifically found that the rebate procedures instituted by the Union violated the *Hudson* safeguards which must be afforded nonunion members forced to contribute dues under O.R.C. § 4117.09(c). *Id.* at 1082–1083. The court, however, made no finding as to the constitutionality of the *City's* conduct; the court only addressed the issue of the constitutionality of the union's rebate procedure. The city's deduction of the fees comported with the terms of the collective bargaining agreement, O.R.C. § 4117.09(c), and the United States Constitution. Consequently, the court held that the indemnification clause entitled the city to reimbursement from the union for the city's liability to plaintiffs resulting from its deduction of plaintiffs' fees. *Id.* at 1084. Here, there has been a specific finding that the City failed in its duty to endure that plaintiffs receive the constitutional protection required by *Hudson* and *Tierney.* Clearly, *McGlumphy* is inapposite to the facts of this case.

Likewise, *Stamford* is factually dissimilar to the case at bar. In that case, the school board entered into a collective bargaining agreement with the defendant union, with the agreement containing a pay schedule which placed female coaches of extra-curricular sports at an economic disadvantage to male coaches. Five female coaches brought suit against the school board and the union, alleging that the pay schedule discriminated on the basis of sex

---

**2.** O.R.C. § 4117.09(c) provides, in relevant part: The agreement may contain a provision that requires as a condition of employment ... that the employees in the unit who are not members of the employee organization pay to the employee organization a fair share fee ... Any public employee organization representing public employees pursuant to chapter 4117. of the Revised Code shall prescribe an internal procedure to determine a rebate, if any, for nonmembers which conforms to fed-

eral law, provided a nonmember makes a timely demand on the employee organization....

**3.** Plaintiffs have filed a memorandum in opposition to the City's motion in which is espoused a similar argument, *viz.,* § 3.06 should not be enforced in this case because it is against public policy to allow a city to knowingly and intentionally violate the constitution when it believes it has contracted away its liability.

in violation of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act.

The school board cross-claimed against the union (and its successor union) on the basis of a "hold harmless" clause under which the union agreed "to hold the Board harmless for any and all judgments, costs, and fees involved in defending any claim against the Board based on any claimed sex discrimination." The school board and both unions moved for summary judgment on the issue of liability under this clause. The district court held that the clause was void as against public policy, and the Court of Appeals for the Second Circuit affirmed. Specfically, the court found that the clause violated the public policy against sex discrimination in that its enforcement would work against the policies embodied in Title VII and the Equal Pay Act; namely, the deterrence of sex discrimination and the compensation of aggrieved persons for injuries caused them on account of sex discrimination. *Id.* at 73. The court believed that if the clause is deemed enforceable, "employers will have little reason to be concerned over whether labor agreements discriminate against women" due to the fact that they will be fully compensated for acts of discrimination. *Id.* Put another way, the court refused to uphold a provision which encouraged sex discrimination.

The gist of the court's holding in *Stamford* was the fact that the terms of the indemnification clause itself encouraged conduct which violated public policy. Here, by contrast, the clause is facially neutral. If § 3.06 were an attempt to indemnify the City specifically for its knowing violations of the *Hudson* requirements, then this case would be analogous to *Stamford.* However, such is not the case. The clause here does not, on its face, violate any public policy by encouraging unconstitutional conduct.

The Union alternatively argues that, even if the indemnification clause is lawful on its face, it should be held unenforceable against the Union as applied to the facts of this case. More specifically, the Union maintains that, as a matter of public policy, the City should not be allowed to escape liability from knowing and willful unconstitutional conduct by using § 3.06. In a supplemental brief, plaintiffs cite to *Cramer v. Matish,* [924 F.2d 1057 (table)] (6th Cir.1990) in support of the Union's position.[4] Specifically, plaintiffs claim that the Sixth Circuit in *Cramer* adopted the reasoning of *Stamford* and consequently held unenforceable an indemnification clause identical to the one at issue here.[5]

The City argues that *Cramer* is inapplicable for three reasons. First, the City claims that the absence of a statute in Michigan similar to O.R.C. § 4117.09(c) which imposes a duty on unions to implement constitutional rebate procedures renders *Cramer* inapposite. In other words, maintains the City, here its third-party complaint includes an alleged violation of § 4117.09 and *Hudson* by the Union, while in *Cramer* the State of Michigan made no claim at all against the union, statutory or otherwise. Thus, in *Cramer,* unlike in the case at bar, there was no issue as to any constitutional or statutory violations on the part of the union which, according to the City, has the primary obligations under *Hudson.* This argument is merely a reiteration of the failed position taken earlier by the City in opposition to plaintiff's motion for summary judgment. The City there attempted to argue that there existed an issue of fact as to whether the Union had provided the rebate procedure mandat-

---

**4.** In *Cramer,* nonunion state employees sued the State of Michigan and the union, alleging that the agreement between the union and the State authorizing the collection of a service fee from nonunion employees violated the *Hudson* requirements. The plaintiffs also challenged the validity of the indemnification clause entered into by the state and the union.

**5.** Plaintiffs' challenge to the clause in *Cramer* is similar to the City's (and plaintiffs') here, *viz.,* the clause violates public policy in that it "causes the state defendants to ignore consideration of whether the deduction of service fees violate the constitutional rights of their employees, especially nonunion employees ..." *Cramer v. Matish,* 705 F.Supp. 1234, 1240 (W.D.Mich. 1988).

ed by *Hudson* and O.R.C. § 4117.09(c), and that this issue precluded the granting of plaintiffs' motion. This court held that whether the Union had instituted the required rebate procedures was irrelevant, because the issue before the court concerned only the City's liability, not the Union's, and the record contained uncontroverted evidence that the City's pre-collection and rebate procedures were deficient under *Hudson* and *Tierney*.

■ It is important to note the true importance of *Tierney* and *Lowary v. Lexington Local Board of Education*, 704 F.Supp. 1430 (N.D.Ohio 1987). In *Lowary*, the defendant school board made an argument similar to that of the City here, *viz.*, the duty to provide a rebate procedure imposed upon the Union by § 4117.09(c) is primary and, if violated by the Union, the City's own responsibilities under *Hudson* are somehow lessened or relieved. A public employer, however, has duties under *Hudson* which are separate and apart from those of the union, and a union's violation of its duties thus cannot form the basis of a public employer's claim for indemnification.

> The Court finds that the essence of the Board's argument is that they are only obligated to follow what the union instructs them to do, and thus they avoid liability for any wrongful act as long as a union was the impetus of the action. The Board's argument is inconsistent with *Hudson* and Ohio Rev.Code § 4117.09. *Hudson* implicitly recognizes that it is the government employer and the union who share the duty in establishing a constitutionally valid fair-share fee procedure. The union's duty, after all, is derivative to the fact that the employer is a governmental actor. To permit a public employer to escape any duty in the implementation of the plan, would impose a governmental standard of conduct on a purely private entity. *Hudson* and cases that follow simply do not support such a conclusion. *See, e.g., Tierney; McGlumphy v. Fraternal Order of Police*, 633 F.Supp. 1074 (N.D.Ohio 1986).

*Lowary*, 704 F.Supp. at 1449.

It might also be noted that the City in its motion for summary judgment does not argue that it is entitled to indemnification because of constitutional or statutory violations on the part of the Union, but rather because of the clear and unequivocal language of § 3.06. The argument regarding the alleged violation by the Union of *Hudson* and § 4117.09(c) was only stressed by the City in response to plaintiffs' supplemental brief citing *Cramer*. For this and the foregoing reasons, then, the City's argument regarding the difference in nature between the respective claims underlying the obligations in *Cramer* and the case at bar must be rejected.

The City's second argument regarding the relevancy of *Cramer* is based upon the contention that in *Cramer*, unlike the case at bar, it is not clear what the indemnification clause there stated or whether the clause even existed. The Sixth Circuit did not reproduce the clause in the appellate opinion but instructed the district court to strike the provision "from the policy." Thus, maintains the City, there may not have been an agreement of indemnification between the State and Union, which means the indemnification may have been a unilateral "policy" on the part of the State.

This argument is without merit, for the district court in *Cramer* made clear that an indemnification agreement did exist with a clause very similar to the one at issue here. *See Cramer*, 705 F.Supp. at 1240. In the district court's opinion the clause in *Cramer* is quoted and provides as follows:

> The union shall indemnify and save the Employer harmless against any and all claims, demand, suits, or other forms of liability which may arise out of any action taken or not taken by the Employer for the purpose of complying with the provisions of this Article.

*Id.*, 705 F.Supp. at 1240, fn. 8. The district court refused to decide whether this clause was void or unenforceable under the facts of the case, noting that the state bargained for the clause and that plaintiffs' failure to point out a congressional mandate allowing modification of the collective bargaining agreement divested it of authority to modi-

fy the agreement's terms under the dictates of *Bowen v. United States Postal Service*, 459 U.S. 212, 241, 103 S.Ct. 588, 74 L.Ed.2d 402 (1982) (White, J., concurring).

The Sixth Circuit, however, addressed the issue of the clause's validity. The court reiterated the principle that, "under *Hudson*, the public employer, not the union, has the primary duty to ensure that the plan is constitutionally valid." *Id.*, slip op. at 7. The court held the indemnification clause void and struck it from the policy, stating that "Indemnification clauses in collective bargaining agreements which purport to relieve public employers from liability for violations of federal constitutional and civil rights are void as against public policy," *id.*, slip op. at 8, citing *Stamford*.

The City's final argument regarding *Cramer* is that in that case, the State of Michigan may very well have made an attempt to relieve itself of liability. Here, by contrast, the City and Union agreed that the City would be liable for violations of law, but that the liability would shift to the Union. In other words, maintains the City, the clause here was not an attempt to relieve the City of liability as it may have been in *Cramer*. Inasmuch as it has been established that the indemnification clause existed and is similar to that in the case at bar, it is clear that the parties in *Cramer* agreed to shift liability as did the City and Union here. In any event, the distinction between "shifting" liability and "relieving" oneself of liability is nebulous at best, for in either case, the public employee is given incentive to act contrary to law.

■ It has previously been established by this court that the City knowingly and willfully violated plaintiffs' constitutional rights, and in so doing breach its duties under *Hudson*. To enforce the indemnification clause under the facts and circumstances of this case would clearly violate the public policies enunciated in *Hudson*. Further, while the provision herein appears facially neutral, this court is constrained by the Sixth Circuit's holding in *Cramer* to declare the entire clause void, in light of its similarity to the clause facing the court

there. Consequently, this court holds as a matter of law that § 3.06 of the collective bargaining agreement is void and unenforceable.

### III. CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by the Union is granted and the motion for summary judgment filed by the City is denied.

IT IS SO ORDERED.