Howard K. ANDREWS, Valerie A. Andrews, Paul Bourdeau, Robert N. Brown, Joseph Fioccla, Barbara C. Hammer, Nancy G. Hultgren, Judith Kollias, John A. Kosloski, Frances McLaughlin, Peter Navage, Mary W. Newman, Denise Panos, John A. Pawloski, Joann Peterson, Thomas Quinlan, Norman C. Remsen, Mildred C. Richard, Arlene L. Salvati, Maureen Schmidt, Barbara T. Stapleton, Frieda B. Stegerwald, George Szigeti

v.

EDUCATION ASSOCIATION OF CHESHIRE, Richard Bye, President, in both his individual and official capacities; New Milford Education Association, Richard Sheridan, President, in both his individual and official capacities; Branford Education Association, John D'Amato, President, in both his individual and official capacities; Connecticut Education Association, Robert F. Eagan, President, in both his individual and official capacities; National Education Association, William McGuire, President, in both his individual and official capacities; Branford Board of Education; Cheshire Board of Education; Windsor Board of Education; and New Milford Board of Education.

Alexander J. JACOVINO, Peter H. Galullo, Joseph A. Mannello, Richard C. Mantiglia, Janice Eterginio, Henry P. Capozzi, Francis Desiderio, Mary Lou Walsh, George R. Desiderio, Carl J. Theriault, Kurt A. Meyer, Rosemary Hudimatch, Louis M. Ruggiero, Michael F. Arcovio, Merle Kadish Arcovio, Susan Cox, Terese P. Filippone, Richard N. Calabro, Carmel Perillo, Charlene Burkacki, Ann M. Farese, Marianne D. Derwin, Jane Mucciacciaro, Anthony Mucciacciaro, Francis G. Creto, Edmund A. Laudati, Charlotte Shocki, Marguerite R. Theriault, Charles L. Stango, Alexander F. Lenda, Jr., Thomas P. Cerasulo, George T. Berardi, William A. Guisto, John F. Keefe, Carol Mambruno, Margaret Generali, Frances B. Marcuse, Joseph B.

McGurk, Mitchell Arisian, Barbara Bianco, Barbara Carrington, Anne Costa, Evelyn E. Craft, Francis P. Desiderio, Ralph E. Knapp, Ned Mencio, Gennaro M. Palmento, Lawrence Purdy, Rosemary Purdy, and David R. Macharelli

v.

WATERBURY TEACHERS ASSOCIATION, Connecticut Education Association, National Education Association, and Waterbury Board of Education.

Civ. A. Nos. H-83-481(JAC), H-83-898(JAC).

United States District Court, D. Connecticut.

Feb. 17, 1987.

John C. Scully, National Right to Work Legal Defense Foundation, Springfield, Va., for plaintiffs.

Robert H. Channin, Bruce R. Lerner, Bredhoff & Kaiser, Washington, D.C., William J. Dolan, Ronald Cordilico, Connecticut Educ. Ass'n, Hartford, Conn., for defendants.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

### Background

These cases present challenges to the constitutionality of proposed procedures

for determining agency fees (fees assessed by unions against non-members who benefit from the unions' bargaining and contract administration) in light of the Supreme Court's ruling in *Chicago Teachers Union v. Hudson,* —— U.S. ——, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) (*"Hudson"*). Plaintiffs also challenge the proposed procedures for collecting agency fees under Connecticut law.

Plaintiffs are employees of the various Connecticut school boards of education named as defendants in this action. The other named defendants are the labor organizations authorized to bargain with the school boards and other groups affiliated with these organizations. Included among these defendants are the Connecticut Education Association ("CEA") and the National Education Association ("NEA"). (The other, local education associations named as defendants may be considered collectively and denominated "LEAs.")

Plaintiffs are not members of the defendant labor organizations, but are in the bargaining units represented by these defendants and therefore are charged agency fees. These fees are collected by the board of education defendants, who function as conduits for the fees from the employees to the unions. Otherwise the defendant boards appear to have little interest in the substance of this litigation and have adopted the position of the defendant labor organizations.

In essence, plaintiffs seek a declaratory judgment that defendants' proposed system is constitutionally deficient under *Hudson* and a permanent injunction against enforcement of the present "union security" clauses in the contracts between the school board defendants and the association defendants. Defendants seek a declaratory judgment that their proposed system complies with the constitutional mandate of *Hudson.* It is undisputed that there are no genuine issues of material fact that would prevent the entry of summary judgment for the party prevailing on the questions of law presented by these motions. Fed.R. Civ.P. 56.

## I.

### A.

In *Hudson,* the Supreme Court stated the procedural requirements necessary to achieve the overall objective of " 'devis[ing] a way of preventing compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining.' " *Hudson,* 106 S.Ct. at 1074, *quoting Abood v. Detroit Board of Education,* 431 U.S. 209, 237, 97 S.Ct. 1782, 1800, 52 L.Ed.2d 261 (1977). The Court held that such requirements included "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." *Id.* at 1078.

Defendants' proposed "Procedure for Determining Amount of Service Fee to be Charged by Local Affiliates of the Connecticut Education Association" ("Defendants' Procedure") *appended to* defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendant Associations' Cross-Motion for Summary Judgment (filed Sept. 17, 1986) ("Defendants' Memorandum"), was created specifically to provide the procedures found to be constitutionally required in *Hudson,* but plaintiffs contend that this effort was a total failure. Relying upon language in *Hudson* emphasizing the need to minimize infringement upon first amendment rights in the creation of such procedures, plaintiffs argue that *Hudson* requires that a union provide the "least restrictive" or "best" system for collecting agency fees. *See, e.g.,* Plaintiffs' Memorandum in Opposition to Defendants' Cross-Motions for Summary Judgment (filed Oct. 14, 1986) ("Plaintiffs' Memorandum") at 3. Many of plaintiffs' arguments rely on parenthetical quotations within footnotes in the *Hudson* decision, but these quotations only provide authority for the proposition in the main text—that proceed-

ings affecting first amendment rights must be "carefully tailored to minimize the infringement" of such rights. *Hudson*, 106 S.Ct. at 1074. Moreover, this important truism was a starting point, not the end product, of the Supreme Court's analysis in *Hudson*. By exclusively emphasizing only the first amendment component of the *Hudson* decision, plaintiffs frequently ignore the *actual* balance between first amendment and union rights struck by the Supreme Court in *Hudson* and seem to assume that mere invocation of generalized propositions concerning the sanctity of the first amendment are enough to dispose of any competing union interest.

Perhaps because they are unhappy with the balance between first amendment and union interests actually struck in *Hudson*, plaintiffs purport to find in the *Hudson* opinion requirements that simply are not there. Plaintiffs read *Hudson* as requiring that a "least restrictive test" be applied to any proposed union scheme for collecting agency fees. According to plaintiffs, "when the least restrictive standard mandated by the Court in *Hudson* is applied, the union can prevail only when its system is the *best*." Plaintiffs' Memorandum at 3 (emphasis in original). Plaintiffs also restate the requirements of adequate notice, prompt impartial review, and escrow of funds in terms far stronger than those which appear in the *Hudson* opinion itself:

> In general terms, a "least restrictive system" requires advance disclosure of the basis for the compulsory fee verified by an independent auditor, prompt review by a genuinely neutral decisionmaker, an independently controlled escrow account, and an objection and appeal procedure that is simple, fair, and readily accessible.

*Id.* Compare *Hudson* at 1078. At one point, plaintiffs appear to deny that any balance whatsoever is required by *Hudson:* "The fee payors' rights are constitutionally based and no 'cost' can permit those rights to be violated." Brief in Support of Plaintiffs' Motion for Summary Judgment (filed Aug. 15, 1986) ("Plaintiffs' Brief") at 31. But if not tautological, this statement is

simply incorrect. The least restrictive test by definition presumes a balancing of interests, not an inevitable trumping of union rights by any conceivable first amendment claim. Despite plaintiffs' characterization of the dispute between themselves and defendants as one between "constitutionality" on the one hand and "administrative convenience" on the other, Plaintiffs' Memorandum at 2–3, it is no disparagement of the constitutional interests at issue in this litigation to recognize that costs and practicality are at the heart of this case.

### B.

The Supreme Court in *Hudson* did not simultaneously recognize that the union's right to collect an agency fee is important enough to infringe upon first amendment rights and then take back that right by requiring unions to meet a constitutional standard which makes the collection of those fees impossible. Nor did the Court rule that it is constitutionally necessary for defendants' fee collection system to provide those procedural protections which would be necessary if only first amendment interests were at stake. For example, the Supreme Court explicitly rejected the idea that particular procedures, such as placing 100% of the nonmember objector's fees in escrow (as is done under the defendants' system in this case) or full evidentiary hearings, are constitutionally mandated. *Hudson*, 106 S.Ct. at 1077 and n. 21. The Court wisely did not purport to prescribe the specific procedures that would be necessary in all circumstances. In determining the facial constitutional adequacy of defendants' system, it is neither appropriate nor necessary for this court to compare defendants' proposed system to systems which plaintiffs prefer; instead, this court's function is simply to test defendants' proposals against the general constitutional criteria clearly articulated by the Supreme Court in *Hudson:* adequate notice, prompt impartial review, and escrow of objectors' funds. If the proposed system provides these three safeguards, then how other systems purport to meet the

same requirements under different circumstances is simply irrelevant to the determination of this particular system's constitutionality.

Defendants' procedure for providing explanation of its determination of the agency fee is described in Section III of Defendants' Procedure, entitled "Information to Potential Objectors." Under the provisions of this section, each potential objector (nonmember of the LEA) will receive a memorandum which

> shall explain the basis for the Association-Determined Service Fee by listing expenditures for each major category of chargeable activities, and also shall inform each Potential Objector of the procedure he or she must follow to challenge the amount of said Fee. Together with the aforesaid memorandum, CEA shall deliver to each Potential Objector a copy of this document and such additional information as may be necessary for him or her to gauge the propriety of the Association-Determined Service Fee, including specifically the following documents:
> 1. The budgets of LEA, CEA, and NEA projecting expenditures for the current service fee year; and
> 2. End-of-year financial reports for LEA, CEA, and NEA indicating actual expenditures for the immediately preceding service fee year, together with statements from an independent auditor or authorized association representative verifying that said reports reflect actual expenditures during that year.

Defendants' Procedure at 3.

Plaintiffs' main attack on the disclosure aspect of the proposed plan is based on its failure to provide for a mandatory independent audit of all of its documents, including its explanatory memorandum and the LEAs' expenditures. They rest this argument on the following sentence in a footnote in *Hudson:* "The Union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include the major categories of expenses, as well

as verification by an independent auditor." *Hudson* at 1076, n. 18. When read in context, however, the requirement of "verification by an independent auditor" appears to apply only to the union involved in the *Hudson* case itself and to be justified in that case by that particular union's size and the amount of money involved. As plaintiffs themselves suggest, it is not the role of the judiciary to write a constitutional agency shop scheme for the parties. Plaintiffs' Brief at 37. And this court does not read *Hudson* as prescribing a single scheme for every union, but rather, as establishing general constitutional norms that may be met by a variety of different systems suitable to the particular circumstances in which they are designed to function.

▇▇▇ There is little basis for the conclusion that every document made part of every disclosure process employed by every union is to be subjected to an independent audit, regardless of the size of the union and the circumstances under which it operates. It is possible that the workings of the proposed system in this case would be more easily understood if defendants had included a statement that the NEA and CEA financial statements would always be subject to independent audit; however, when considering the disclosure provisions of the plan as a whole, this court cannot find, on the basis of one clause of one sentence of one footnote in *Hudson,* that the failure to provide an audit of the explanatory memorandum itself, or the failure to require an independent audit for the LEAs' expenditures, renders the proposed system constitutionally deficient.

### C.

Plaintiffs also challenge the use of the CEA's statewide financial data to determine the percentage of the LEAs' budgets that is expended for chargeable activities. Defendants contend that this "evidentiary presumption" is necessary to avoid the potentially prohibitive cost of having to prove the individual percentages of nearly one hundred LEAs. Defendants' Memorandum

at 35–36. Furthermore, defendants contend that in the vast majority of cases, basing the agency fee on statewide data calculated for the CEA would be more likely to result in a *smaller* fee assessment against non-members, because LEAs spend a far greater proportion of their funds on the chargeable activities of negotiating and administrating collective bargaining agreements than does the state-wide defendant, CEA, which has a more varied agenda. *Id.* at 36. Plaintiffs suggest that in a small number of situations this general proposition will not be true, Plaintiffs' Brief at 31; nevertheless, defendants' assumption appears reasonable, since local associations are "much less likely to engage in extensive political and lobbying activities than the state and national organizations and, therefore, it is less likely that the moneys they receive from [nonmember objectors] will be used for those purposes." *Robinson v. State of New Jersey*, 547 F.Supp. 1297, 1324 (D.N.J.1982), *rev'd on other grounds*, 741 F.2d 598 (3d Cir.1984), *cert. denied*, 469 U.S. 1228, 105 S.Ct. 1228, 84 L.Ed.2d 366 (1985).

■ Considering these arguments in light of the Supreme Court's repeated recognition that "there are practical reasons why '[a]bsolute precision' in the calculation of the charge to nonmembers cannot be 'expected or required,'" *Hudson*, 106 S.Ct. at 1076, n. 18, *citing Railway Clerks v. Allen* 373 U.S. 113, 122, 83 S.Ct. 1158, 1163, 10 L.Ed.2d 235 (1963) and *Abood v. Detroit Board of Education*, 431 U.S. 209, 239–240 n. 40, 97 S.Ct. 1782, 1801–1802 n. 40, 52 L.Ed.2d 261 (1977), defendants' use of the evidentiary presumption that the statewide figure is appropriate for the locals satisfies constitutional requirements, even if in rare instances there may arise situations in which this presumption is incorrect.

### D.

Plaintiffs' next argue that the proposed system's requirement that nonmembers object within thirty days after the fees have been assessed is constitutionally deficient because a thirty-day period is "so short that it is an obstacle for potential objectors." Plaintiffs' Brief at 11. Once again plaintiffs' argument rests on the notion that *Hudson* requires that each element of the defendants' procedure must be the "least restrictive to freedom of association," *id.* at 13; once again, plaintiffs appear to ignore that there are competing interests that favor limiting the objection period.

■ Under Section III of the defendants' proposed system, potential objectors must receive service fee assessment information, including an explanation of their right to object, prior to November 15 of each service year; Section IV of the proposed system clearly and unambiguously requires that all notices of objection "be postmarked or delivered on or before December 15 of each service year." Defendants' Procedure at 3–4. Accordingly, potential objectors will always have at least thirty days to object and will always know the date by which this period will end. There is no room for doubt or misunderstanding as to either the requirement or the timing of an objection. The interest in a prompt resolution of such disputes is clear. The thirty-day period for objections is surely reasonable, and, indeed, ample. Accordingly, the constitutional challenge to the requirement that nonmembers must object to the proposed fees within thirty days is without merit.

### II.

The remainder of plaintiffs' arguments are largely devoted to attacks upon the proposed system's use of the American Arbitration Association ("AAA") and that organization's Rules for Impartial Determination of Union Fees ("Rules"), *appended to* Defendants' Memorandum. Plaintiffs allege that general union domination of the AAA, and disproportionate union control of the selection of arbitrators under the AAA Rules, preclude these arbitrators from serving as the "impartial decisionmaker" required by *Hudson*. Furthermore, they allege that the specific rules

promulgated for fee determination hearings fail to provide the nonmember objector with adequate opportunity to be heard and to present evidence.

Neither argument is persuasive. In *Hudson,* the relevant constitutional defect was total union control over the appeals process, including the selection of an arbitrator who was the union's "unrestricted choice." *Hudson,* 106 S.Ct. at 1077 n. 21. Plaintiffs attempt to characterize the selection process under the AAA Rules as suffering from the same defect. Yet in contrast to the system of selection disapproved in *Hudson,* under the AAA Rules, the AAA, not the union, selects the arbitrator from a "special panel of experienced labor Arbitrators," Rules at ¶ 3, and the AAA may disqualify the Arbitrator upon challenge for cause by participants or after mandatory disclosure of possible bias by the Arbitrator himself. *Id.* at ¶ 4.

■ It is true, of course, as a general rule that "in the absence of pecuniary interest or personalized animus, evidence of a generalized bias may be sufficient to establish a constitutional violation, but 'only in the most extreme of cases.'" *Robinson v. State of New Jersey,* 806 F.2d 442, 450 (3d Cir.1986), *quoting Aetna Life Insurance Co. v. Lavoie,* —— U.S. ——, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986) (*"Aetna"*). Furthermore, the use of an arbitrator for agency fee disputes was explicitly approved by the Supreme Court in *Hudson,* 106 S.Ct. at 1077 n. 21, and "[t]he mere appearance of bias that might disqualify a judge will not disqualify an arbitrator." *Pitta v. Hotel Association of New York City, Inc.,* 806 F.2d 419, 420, 423 (2d Cir.1986) (citation omitted). Plaintiffs' blunderbuss attacks on the AAA's selection procedures and on the qualifications of the AAA's arbitrators include statements such as these: "the AAA-approved arbitrator is not a true neutral but is merely a rubber stamp for the unions," Plaintiffs' Brief at 10, n. 1; "the AAA will serve as merely a rubber stamp for the unions," *id.* at 24;

"[t]he AAA will be used by the defendant to, in effect, launder their payments to [its handpicked] arbitrators," *id* at 23. Plaintiffs' rhetorical flourishes notwithstanding, the court concludes that the procedures for selecting arbitrators under the AAA Rules are fair and leave little room for even the appearance of bias. There are no grounds whatsoever for believing that the selection process for arbitrators under the AAA Rules will result in decisions made by anyone other than the "impartial decisionmaker" required by the Supreme Court in *Hudson.*

■ Plaintiffs' procedural claims are similarly questionable or inaccurate; importantly, they ignore the Supreme Court's rejection in *Hudson* of full-blown evidentiary hearings as an invariable requirement for appeals of agency fee determinations. *Hudson,* 106 S.Ct. at 1077 n. 21. Without going into too great detail, the court simply notes that under the AAA Rules any participant may be represented by counsel (¶ 7), obtain a stenographic record of the hearing (¶ 8), and present evidence during the proceedings, including affidavits or live testimony from relevant witnesses, documents, and exhibits (¶¶ 12, 14, 15). Furthermore, the charge that the union may unilaterally provide for the waiver of an oral hearing under ¶ 19 of the Rules, Plaintiffs' Brief at 25, is misleading; plaintiffs fail to note that the same provision requires the arbitrator to "specify a fair and equitable procedure" if the participants are unable to agree to a procedure. In any event, this particular charge may be irrelevant to the present case because the proposed system does not appear to provide for such a waiver: "If any timely objections are filed, CEA *shall,* promptly ... ask the AAA to appoint an arbitrator experienced in public sector labor relations to hold a hearing...." Defendants' Procedure at Section IV(B) (emphasis added).[1] Finally, under the AAA Rules "[t]he burden is on the union to justify whatever fees are being disputed," Rules at 2, and under Defendants' Proce-

---

**1.** Plaintiffs also object to the proposed system's requirement that the AAA arbitrator be experi-

enced in public sector labor law. Plaintiffs' Brief at 22.

dure the LEA, CEA, and NEA are bound by the arbitrator's decision while the non-member objector is not. Defendants' Procedure at Section VI(C). In these circumstances, plaintiffs' attacks on the use of the AAA and on that organization's Rules are without merit.

### III.

Plaintiffs' last two constitutional claims concern the use of Hartford as a centralized location for all appeals and the genuineness of defendants' proposed escrow account.

### A.

■ *Hudson* requires that the objector have a "reasonable opportunity" to challenge the agency fee. This court takes judicial notice that Hartford is centrally located in a small state—indeed, one in which there is a single federal judicial district. To require an objector to attend a hearing at such a central location, which will almost invariably be within an hour's drive of an objector's home, is not unreasonable, much less constitutionally objectionable.[2]

### B.

■ The argument that defendants' escrow account is not a "true" escrow account, Plaintiffs' Brief at 34, is totally without merit, based upon a characterization of the account which appears to have no factual basis. For example, Section IV of the proposed system describes the account as "an interest-bearing escrow account established in and maintained by the Connecticut National Bank." Defendants' Procedure at 4–5. Yet without introducing any evidence whatsoever to contradict this simple and straightforward description of the proposed escrow account, plaintiffs somehow interpret this sentence as describing "apparently a regular bank account set up and administered by the CEA." Plaintiffs'

Brief at 34. Although the proposed system requires the LEA to send the objector's entire fee, and not just the portion that is potentially objectionable, to the Connecticut National Bank "promptly" after it is received, plaintiffs find a constitutional defect in the fact that the LEA even receives the fee in the first place. *Id.* Furthermore, plaintiffs contend that the agency fee payors should have been given a say in the choice of the account, to avoid the possibility that the union will use the account to influence the bank's policy on such matters as construction loans and disinvestment in South Africa. *Id.* at 34, n. 6. They also purport to find in *Hudson* the requirement that the account be jointly held or governmentally administered, *id.* at 34. These are simply additional examples of plaintiffs' tendency to wrench from *Hudson's* general language a single, specific constitutional agency fee scheme.

### C.

■ Finally, having disposed of all of plaintiffs' federal claims, this court concludes that it would be inappropriate to exercise its pendent jurisdiction and issue a declaratory judgment on the validity of the proposed system under state law. Accordingly, plaintiffs' state law claim must be dismissed for lack of an independent basis of subject matter jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Federman v. Empire Fire and Marine Insurance Co.*, 597 F.2d 798, 809 (2d Cir.1979) ("Dismissal of the state claim is the recommended procedure ... in cases where the federal claim is disposed of prior to trial").

### Conclusions

For the reasons stated above, plaintiffs' motion for summary judgment is denied

---

**2.** The use of a single location for hearings might be objectionable in a large state—Texas and Alaska come to mind as possible examples. Of course, that is precisely why it is impossible to hypothesize a single, universally applicable constitutional agency shop scheme. *See, supra,* I(B).

and defendants' cross-motions for summary judgment are granted. Plaintiffs' pendent state law claim is dismissed without prejudice. Judgment shall enter for defendants.

It is so ordered.