Marianna GILLESPIE, et al., Plaintiffs,

v.

**WILLARD CITY BOARD OF EDUCATION et al.,**
**Defendants.**

**No. C87-7043.**

United States District Court,
N.D. Ohio, W.D.

Sept. 28, 1987.

James A. Calhoun, Calhoun, Benzin, Kademenos & Heichel, Mansfield, Ohio, R. Timothy Bauer, Boggs, Boggs & Boggs, Toledo, Ohio, for plaintiffs.

Ted Iorio, Gallon, Kalniz & Iorio, Toledo, Ohio, for defendants.

## MEMORANDUM AND ORDER

McQUADE, District Judge.

This case presents challenges to the constitutionality of the procedures established by various union organizations and the Willard School Board for collecting and determining agency fees. Agency fees are assessed by unions against non-members who receive the benefits of union bargaining and contract administration. These challenges are being considered in light of the standards the Supreme Court set forth in *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) ("Hudson"), and the ruling of the Sixth Circuit Court of Appeals in *Tierney v. Toledo*, 824 F.2d 1497 (6th Cir.1987). Plaintiffs contend that the Ohio law permitting such agency fee collections violates the U.S. Constitution. Furthermore, plaintiffs have brought this action under 42 U.S.C. § 1983, arguing that their money has been taken without due process of law.

Plaintiffs are employees of the Willard School Board of Education. Leo Dotson, Marianna Gillespie, Mary Appellof, Linda Hutchins, Marilyn Sands and Karen Myers are teachers. Rita DeVault and Gordon Miller are employees in the Pupil Personnel Services Department. Plaintiffs are represented by the defendant Willard Education Association (WEA), but are not members of that organization nor the Ohio Education Association (OEA), a WEA affiliate organization also named as a defendant in this action. Since these plaintiffs are represented by these organizations and receive the benefits of union bargaining and contract administration, they are assessed agency fees, also called fair share fees.

The defendant, Willard Board of Education, is a political subdivision of the state and a public employer within the meaning of O.R.C. 4117.01(B).

WEA and the school board reached its most recent agreement providing for the collection of agency fees on September 1, 1986, and modified it on October 30, 1986 by a memorandum of understanding.

Defendants started collection of the agency fees in November of 1986, except for individuals employed after October 31, 1986. For those individuals hired after that date, agency fees were collected from their second paycheck.

The procedure for the collection of agency fees is set forth as follows: (1) Deductions are made from all Willard School Board Employees covered by the agreement between WEA and school board; (2) Notice of the amount of the annual fair share fee, which shall not be more than 100% of the unified dues [1] of the association, is to be provided to all nonunion members. Notice is to be furnished by first-class mail to all nonunion members at his/her home by November 15 of each year or whenever the independent auditors' reports are received, whichever is later. *See* Stipulations Exhibits C at 2; (3) The notice must state the amount of the association determined fair share fee for the current membership year, as well as an explanation of how the fee was calculated. In addition, the following items must be provided:

A copy of the WEA's independent certified public accountant's audit report for the preceding membership year;

---

1. Unified dues are paid to the WEA. Portions later are distributed to the OEA, the North Central Ohio Education Association and the National Education Association.

A copy of the OEA's independent certified public accountant's audit report for the preceding membership year;

Where applicable/available, a copy of the appropriate district association's certified public accountant's audit report for the preceding membership year;

Copies of the adopted budgets for the current membership year of the WEA, the OEA, the appropriate district association, and the local association;

A copy of the OEA Fair Share fee rebate procedure.

*See* Stipulations, Exhibit C at 2.

(4) This year, the first agency fees were collected before notice was sent to the nonunion members. Notice reached all but one nonunion member about one month later. One plaintiff, Leo Dotson, did not receive the packet of information at that time in that he was inadvertently listed as a life member of the OEA. He received the information in February, 1987. *See* Stipulation 15 at note 2; (5) Upon receipt of this notice, dissenters have 30 days to file objections to the collection of the agency fees; (6) Dissenters have the option of an early rebate. If they exercise this option, they forfeit the right to a hearing before an impartial decisionmaker; (7) the second option allows dissenting members to be heard by an impartial decisionmaker. Meanwhile, 100% of the dues paid by members is collected from the nonunion members' paycheck, and that money is placed into an interest-bearing escrow account within ten (10) days after an objection is received. It remains in that account until a determination of a rebate amount has been made by an impartial decisionmaker; (8) An impartial decisionmaker is selected from the American Arbitration Association, [hereinafter AAA], under the AAA's Rules for Impartial Determination of Union Fees. *See,* Stipulations, Exhibit F–4; (9) The rebate amount is based upon OEA's preceding membership year. The total OEA impermissible expenditures are compared with the total OEA expenditures. The result is the amount that is applied to determine part of the rebate amount. The WEA makes a similar calculation to determine its portion of the dues which should be rebated. *See,* Stipulations, Exhibit C at 2.

Plaintiffs and defendants each are seeking summary judgment. Plaintiffs also desire injunctive relief and restitution of collected agency fees, plus interest. Plaintiffs argue that the defendants' system for collection of agency fees is constitutionally inadequate under both *Hudson* and *Tierney*. Defendants also seek summary judgment arguing that the procedure for the collection and challenge of agency fees is constitutionally sound and meets all of the requirements set forth in *Hudson*. Defendants further contend that the court need not find that this system comports with the requirements of *Tierney*, in that the facts of each case require different results.

The parties have stipulated to the facts in this case. *See* Stipulations of Fact. Based upon these stipulations, the court finds that there are no genuine issues of material fact that would prevent the entry of summary judgment for the party prevailing on the questions of law presented by the motions. Fed.R.Civ.P. 56.

I

▮ Plaintiffs allege that the collection of the agency fees violates the plaintiffs' due process rights because the government is "taking" their property without appropriate procedural safeguards. The court finds that the plaintiffs' argument is without merit. The Supreme Court has upheld the constitutionality of agency shop provisions which require nonunion members to contribute service charges to pay for the benefits of the union bargaining on its behalf and the union administration of the contract. *Abood v. Detroit Board of Education,* 431 U.S. 209, 232, 97 S.Ct. 1782, 1798, 52 L.Ed.2d 261, 266 (1977). *See also, Hudson v. Chicago Teachers Union,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986); and *Ellis v. Railway Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). The Supreme Court in *Abood,* 431 U.S. at 232, 97 S.Ct. at 1798, held that this "taking" was justified based upon a bal-

ancing of First Amendment rights and the need for labor peace.

## II

■ Plaintiffs also contend that the collection of the agency fee from the nonunion members violates their First Amendment rights because fees are used for political purposes other than those the plaintiffs desire to support. However, the court finds that this argument is without merit in that all of the nonunion fees collected are placed in an interest-bearing escrow account. Placement of these funds in this account effectively prevents the union from using the plaintiffs' moneys for non-permissible purposes and does not allow the union the exact a forced loan from nonunion members. In *Hudson*, the Supreme Court held that an escrow account met the constitutional requirements for protecting nonunion members' First Amendment rights with respect to the collection of the agency fees. Therefore, the escrow account here meets the constitutional requirements as set forth in *Hudson.*

■ However, one problem with the escrow account in the instant case is that it did not exist at the beginning of the collections. Based upon that occurrence, plaintiffs ask that all of the agency fees collected be returned to them. This court finds that all fees collected to date should be returned because a constitutional procedure for their collection has not been established. *Tierney v. City of Toledo*, 824 F.2d 1497 (6th Cir.1987). However, once such a procedure has been established and a proper amount assessed, defendants will be entitled to the amount of 1986–1987 dues which would have been paid to support collective bargaining and contract administration. *McGlumphy v. Fraternal Order of Police*, 633 F.Supp. 1074, 1084 (N.D.Ohio 1986).

## III

■ Plaintiffs also contend that the Board's delegation of the collection to the union is improper and that Ohio Rev.Code § 4117.09(C), which permits such delegation and collections, is unconstitutional. The court finds that such delegation is proper. *Abood v. Detroit Board of Education*, 431 U.S. 209, 232, 97 S.Ct. 1782, 1798, 52 L.Ed.2d 261, 266 (1977). Furthermore, this court finds that since such delegation and collection is permissible, Ohio Rev.Code § 4117.09(C) is constitutional.

## IV

■ Plaintiffs also contend that the notice provided by the WEA and OEA regarding the amounts of dues chargeable and nonchargeable to union members, and the notice concerning how the agency fee was calculated, do not pass constitutional muster. The purpose of the financial disclosure within the meaning of *Hudson* is to provide the dissenting nonunion members with a reasonable basis upon which to form their objections. The court finds that although the information provided is extensive, this notice fails to meet the constitutional standards the Supreme Court set forth in *Hudson.* Defendants failed to provide the plaintiffs with information concerning which expenses in the budgets of the WEA, the North Central Ohio Education Association, (NCOEA), and the OEA were considered chargeable to nonunion members and which were not considered chargeable when the union determined the amount to be rebated. Defendants incorrectly argue that since 100% of the non-member agency fees are escrowed, precision in notifying nonunion members of chargeable and nonchargeable expenses is not necessary. However, this court finds that *Hudson* requires that such a determination be made and provided to dissenters in order to facilitate their filing of objections.

■ Neither *Hudson* nor *Tierney* require that an independent auditor make the determination regarding which expenditures are chargeable and which are nonchargeable. The *Hudson* Court, however, requires a review of the financial reports by an independent auditor. In the case at bar, an independent auditor has, in fact, reviewed a portion of the information provided to the dissenters. That review of the expenditures of the WEA and the OEA

appears to be sufficient to allow the dissenters to form a basis for objections.

■ *Hudson* does not require that each local and district expenditure be audited by an independent audit. *Andrews v. Education Association of Cheshire*, 653 F.Supp. 1373, 1377 (D.Conn.1987).

"There is little basis for the conclusion that every document made part of every disclosure process employed by every union is to be subjected to an independent audit, regardless of the size of the union and the circumstances under which it operates." *Id.* at 1377.

The *Andrews* Court further stated that: "When considering the disclosure provisions of the plan as a whole, this court cannot find, on the basis of one clause of one sentence of one footnote in *Hudson*, that the failure to provide an audit of the explanatory memorandum itself, or the failure to require an independent audit for the LEA's [the local union organization] expenditures renders the proposed system constitutionally deficient." *Id.* at 1377.

■ Furthermore, this court finds that the procedure used for determining agency fee percentages for the WEA and the NCOEA is constitutionally permissible. The union uses the percentage of nonchargeable expenses for both the state and national organizations to determine the percentage of local and district dues which is not chargeable. Such a procedure has been held to meet the requirements of *Hudson*, and found to be constitutional. *Andrews v. Education Association of Cheshire*, 653 F.Supp. 1373, 1378 (D.Conn. 1987). In *Andrews*, the court found that this procedure resulted in a smaller fee assessment against nonunion members because it stated that national and state organizations spend a greater proportion of their funds on nonchargeable activities.

The *Andrews* Court stated, quoting *Robinson v. State of New Jersey*, 547 F.Supp. 1297, 1324 (D.N.J., 1982), in part: "Defendants' assumption appears reasonable, since local associations are much less likely to engage in extensive political and lobbying activities than the state and national organizations, and therefore, it is less likely that the moneys they receive from [nonmember objectors] will be used for those purposes."

■ Plaintiffs also argue that defendants must open the union books to them in order to provide the nonunion members with sufficient information to challenge the amount of the agency fee collected. Such action is not constitutionally required, nor is it required by *Hudson*. *Hudson* does require that the union furnish sufficient information to facilitate the dissenters' decisionmaking process. However, the Supreme Court stated that it does not require the union to disclose every expenditure it made in the past year.

The Supreme Court stated in *Hudson*: "We continue to recognize that there are practical reasons why [a]bsolute precision in the calculation of the charge to nonmembers cannot be 'expected or required.' [*Railway Clerks v.*] *Allen*, 373 U.S. [113] at 122, 83 S.Ct. [1158] at 1163–1164 [10 L.Ed.2d 235 (1963)], *quoted* in *Abood*, 431 U.S. at 239–240, n. 40, 97 S.Ct. at 1801–1802, n. 40. Thus, for instance, the Union cannot be faulted for calculating its fee on the basis of its expenses during the preceding year. The Union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include the major categories of expenses, as well as *verification* by an independent auditor."

■ Plaintiffs also urge this court to find that the WEA procedure is unconstitutional in that it does not require the union to reduce the agency fee assessed by an amount equal to the percentage of funds not attributable to permissible activities. Plaintiffs contend that such an advanced reduction is required by the Sixth Circuit Court of Appeals decision in *Tierney v. City of Toledo*, 824 F.2d 1497 (6th Cir. 1987). The WEA procedure calls for the escrowing of an amount equal to 100% of the dues paid by WEA members.

Defendants argue that the escrowing of 100% of the union dues paid by dissenting members is proper. They contend that this

is the best result when balancing the union's right to such moneys and the First Amendment rights of the dissenting members. However, this court, based upon the Sixth Circuit Court of Appeals decision in *Tierney*, finds that the advanced reduction of the agency fee before it is escrowed is required by *Tierney*.

The Court of Appeals held in *Tierney*: We therefore believe that the Supreme Court's approval of 100% escrow as satisfying *Hudson's* first requirement refers to escrowing 100% of the remaining, non-clearly ideological proportion of the fee which the union may collect. *Id.* at 1504.

The *Tierney* Court further stated that a procedure requiring a nonmember to pay full union dues rather than an amount reduced in advance by an amount of dues that represents the union expenditures that further ideological and other purposes unrelated to collective bargaining fails to meet the mandate of the *Hudson* court. The court added that: "We also believe that this plan, contrary to *Hudson*, creates a forced exaction followed by rebate. The foregoing procedures violate *Hudson* because the fee in its entirety is placed in escrow, whereas under *Hudson*, as we read it, only those sums which correspond to amounts reasonably in dispute, and, at the unions option, indisputably agreement-related, may be placed in escrow." *Id.* at 1506.

Although this court finds that in *Ellis v. Brotherhood of Railway, Airline and Steamship Clerks*, 466 U.S. 435, 444, 104 S.Ct. 1883, 1890, 80 L.Ed.2d 428 (1984), the Supreme Court stated that either "advance reduction of dues *and/or* interest-bearing escrow accounts" would pass constitutional muster, this court is bound to follow the *Tierney* decision of the Sixth Circuit Court of Appeals, holding that advanced reduction of agency fees is constitutionally required by *Hudson*.

## V

■ Plaintiffs also argue that the hearing before an impartial decisionmaker to determine the proper fee is inadequate and untimely.

Plaintiffs contend that the *Hudson* Court requires that the dissenters have access to both an impartial decisionmaker and a hearing complete with cross-examination of witnesses. This court finds that such a "full-dress" administrative hearing is not required by *Hudson*. The *Hudson* court explicitly stated that such a hearing was not required.

"We do not agree, however, with the Seventh Circuit that a full-dress administrative hearing, with evidentiary safeguards, is part of the 'constitutional minimum.' We think that an expeditious arbitration might satisfy the requirements of a reasonably prompt decision by an impartial decisionmaker so long as the arbitrator's selection did not represent the Union's unrestricted choice." *Hudson*, 106 S.Ct. at 1077 n. 21. Therefore, the type of hearing provided under this procedure meets the mandates of *Hudson*, and this court finds that it does so in a timely fashion.

■ Plaintiffs also argue that an oral hearing is required. They also contend that the American Arbitration Association, (AAA), Rules for Impartial Determination of Union Fees allow the union to waive such a hearing, violating their constitutional rights. This court, however, finds that an oral hearing is not mandated under *Hudson*. Instead, *Hudson* only requires a decision by an impartial decisionmaker. *Id.* at 1076. Due process, however, does require that the nonunion members be provided with the same opportunity as the union to waive the oral hearing.

■ Plaintiffs further urge that resolution of an agency fee dispute by an arbitrator from the AAA does not meet the *Hudson* requirements of resolution by an impartial decisionmaker. Plaintiff argues that board members of the AAA include union representatives, employers of unionized companies, and the president of the National Education Association, and therefore, any decision made by an AAA arbitrator would be biased in favor of the union perspective. This court finds that resolution by AAA arbitrators does in fact meet the requirements of a hearing before an

impartial decisionmaker as required by *Hudson.* More than 120 individuals sit on the AAA board. This court finds that one member of that board of 120 people cannot serve to influence the decisions of the arbitrators in favor of the unions. Furthermore, "the Supreme Court has not been quick to find that an adjudicator's potential bias against one whose cause he or she hears rises to the level of a constitutional violation." *Robinson v. State of New Jersey,* 806 F.2d at 450.

In *Aetna Life Insurance Co. v. LaVoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986), the Supreme Court noted that "in the absence of pecuniary interest or personalized animus, evidence of a generalized bias may be sufficient to establish a constitutional violation, but only in the most extreme cases." The instant case does not present an extreme case.

In addition, the *Robinson* Court stated that "in *Hudson,* the Supreme Court hinted that a review board would pass constitutional muster as long as its membership was not controlled by the union alone." *Id.* at 450. In this case, the union does not have sole control of the arbitrator.

The court in *Andrews* found that "the procedures for selecting arbitrators under AAA rules are fair and leave little room for even the appearance of bias. There are no grounds whatsoever for believing that the selection process for arbitrators under the AAA Rules will result in decisions made by anyone other than the 'impartial decisionmaker' as required by the Supreme Court in *Hudson.*" *Andrews* at 1379.

■ Plaintiffs also argue that they must have a choice in the selection of the arbitrators. Neither *Hudson* nor *Tierney* require such a finding.

Plaintiffs also urge that the WEA procedure is deficient because the Ohio State Employment Relations Board, (SERB), is not statutorily equipped to serve as an impartial decisionmaker. The question is moot because the procedure under consideration in the instant case no longer calls for SERB to act as the arbitrator.

**VI**

■ Plaintiffs also contend that the breakdown of dissenters into Category I and Category II dissenters should not be permitted. The defendants argue that the breakdown of dissenters into Category I and Category II dissenters is for the benefit of these dissenters. The defendants state that the Category I objectors can immediately receive a rebate of some of the money they paid based upon an unchallenged union determination. These objectors then waive the right to a hearing. The Category II objectors, however, have the hearing option, and instead of a prompt refund of a union-determined amount, their money is placed in an interest-bearing escrow account. The plaintiffs contend that the first procedure deprives the dissenters of their right to a decision by an impartial decisionmaker. However, the defendants argue that the Category I objectors can forego the immediate rebate, receive a hearing and have their money escrowed. Therefore, the defendants argue that the objectors do not lose their right to a hearing. Although this court finds that the dissenters can undertake either procedure, the procedure for Category I objectors does, in fact, deprive these individuals of a right to a hearing before an impartial decisionmaker as required by *Hudson,* and therefore, is unconstitutional.

Having found that the plaintiffs' rights were indeed violated, this court now considers the question of an appropriate remedy. The remedy shall include an injunction. In addition, this court finds that the agency fees collected to date must be returned to the plaintiffs. Furthermore, the defendants are directed to establish a constitutionally sufficient procedure for determining an appropriate rebate. This court will retain continuing jurisdiction over this matter to insure that constitutional procedures are implemented as the District Court did in *McGlumphy v. Fraternal Order of Police.* 633 F.Supp. 1074 (N.D.Ohio 1986). That court found that the union only had to return the amount of dues collected in excess of those fees determined by a constitutionally sufficient procedure to support collective bargaining, contract administration

and grievance adjustment activities. *Id.* at 1084. Therefore, this court finds that once a constitutional procedure is implemented, the union may retroactively collect the amount of dues it would have received for support of 1986–1987 bargaining contract administration.

Finally, the court finds that the plaintiffs have demonstrated no set of facts that would entitle them to damages, either compensatory or punitive.

It is therefore

ORDERED that plaintiffs' motion for summary judgment is granted;

FURTHER ORDERED that defendants' shall forthwith make restitution of the agency fees plus interest to the plaintiffs;

FURTHER ORDERED that plaintiff's motion for injunctive relief is granted, and the defendants, and each of them, are enjoined from deducting from plaintiffs' salaries, or in any other manner require plaintiffs to pay agency union fees, pursuant to the Collective Bargaining Agreement of 1986–1987 between WEA and the defendant Board.

FURTHER ORDERED that once a constitutionally sufficient procedure is established, the union is permitted to collect the 1986–1987 fees due from plaintiffs;

FURTHER ORDERED that defendants' cross-motions for summary judgment are denied.

FURTHER ORDERED that in all other respects, the plaintiffs' demands for relief are denied;

FURTHER ORDERED that costs are taxed against defendants.