[No. C009380. Third Dist. Oct. 29, 1991.]

JANICE J. JERABEK et al., Plaintiffs and Respondents, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Defendant;
AFL-CIO et al., Interveners and Appellants.

## COUNSEL

Diane Lee Ross, Altshuler, Berzon, Nussbaum, Berzon & Rubin, Marsha Berzon, Jonathan P. Hiatt, Kirschner, Weinberg & Dempsey, Richard Kirshner and William C. Heath for Interveners and Appellants.

Turner & Sullivan, Richard K. Turner, Lori Ann Joseph and Milton L. Chappell for Plaintiffs and Respondents.

## OPINION

**CARR, Acting P. J.**—Plaintiffs are teachers who do not belong to their employee organization but pay an agency fee in lieu of dues.[1] They filed suit for declaratory and injunctive relief against the Public Employment Relations Board (PERB), asserting promulgated regulations relating to the collection of agency fees violated constitutional safeguards enunciated in *Chicago Teachers Union v. Hudson* (1986) 475 U.S. 292 [89 L.Ed.2d 232 [106 S.Ct. 1066] (hereinafter referred to as *Hudson*). The trial court upheld most of the regulations but found portions of two regulations unconstitutional. Those regulations authorize the union to provide notice outlining the basis for the agency fee concurrently with the first agency fee collection, provided all of the collected fees are placed into escrow until any objectors are identified. (Cal. Code Regs., tit. 8, §§ 32992, subd. (c)(2), 32995, subd. (a)(2).) On appeal, interveners assert the two challenged provisions pass constitutional muster. We agree and shall reverse.

---

[1]For ease of reference, the terms "employee organization," "exclusive bargaining representative," and "union" are used interchangeably in our opinion.

## GENERAL PRINCIPLES

To place interveners' claims in context, initially we outline the relevant statutes and case law.

### A.  California statutes

The Ralph C. Dills Act (Gov. Code, § 3512 et seq.) governs labor relations for California state employees. Among its provisions is Government Code section 3515.7, which authorizes an exclusive bargaining representative to enter into an agreement with the state employer providing for "organizational security in the form of maintenance of membership or fair share fee deduction." "Organizational security" includes "[a]n arrangement that requires an employee, as a condition of continued employment, either to join the recognized or certified employee organization, or to pay the organization a service fee in an amount not to exceed the standard initiation fee, periodic dues, and general assessments of the organization . . . ." (Gov. Code, § 3540.1, subd. (i)(2).)

Government Code section 3513, subdivision (k) defines "fair share fee" as "the fee deducted by the state employer from the salary or wages of a state employee in an appropriate unit who does not become a member of and financially support the recognized employee organization. The fair share fee shall be used to defray the costs incurred by the recognized employee organization in fulfilling its duty to represent the employees in their employment relations with the state, . . ."

California statutes also recognize the right of a nonmember employee to be free from compulsory subsidization of activities unrelated to the conditions of employment or the collective bargaining process. Government Code section 3515.8 provides: "Any state employee who pays a fair share fee shall have the right to demand and receive from the recognized employee organization, under procedures established by the recognized employee organization, a return of any part of that fee paid by him or her which represents the employee's additional pro rata share of expenditures by the recognized employee organization that is either in aid of activities or causes of a partisan political or ideological nature only incidentally related to the terms and conditions of employment, or applied towards the cost of any other benefits available only to members of the recognized employee organization. The pro rata share subject to refund shall not reflect, however, the costs of support of lobbying activities designed to foster policy goals and collective negotiations and contract administration, or to secure for the employees represented advantages in wages, hours, and other conditions of employment

in addition to those secured through meeting and conferring with the state employer. The board [PERB] may compel the recognized employee organization to return that portion of a fair share fee which the board may determine to be subject to refund under the provisions of this section."

## B.   United States Supreme Court cases

On numerous occasions the Supreme Court has analyzed constitutional concerns presented in agency fee cases. We recently recapitulated these cases in *Lillebo* v. *Davis* (1990) 222 Cal.App.3d 1421, 1430-1438 [272 Cal.Rptr. 638]. Rather than repeating that summary here, we briefly mention only two cases of particular significance to the matter before us.

In *Abood* v. *Detroit Board of Education* (1977) 431 U.S. 209 [52 L.Ed.2d 261, 97 S.Ct. 1782], the Supreme Court upheld agency fee systems in which employees who are not members of the exclusive bargaining representative are required to pay a fair share of the union's cost of negotiating and administering a collective bargaining agreement. (*Id.* at p. 232 [52 L.Ed.2d at pp. 282-283].) This system is designed to prevent the problems associated with "free riders," those who "refuse to contribute to the union while obtaining benefits of union representation that necessarily accrue to all employees." (*Id.* at p. 222 [52 L.Ed.2d at p. 276].)

The *Abood* court also recognized that nonmember employees have a constitutional right to "prevent the Union's spending a part of their required service fees to contribute to political candidates and to express political views unrelated to its duties as exclusive bargaining representative." (431 U.S. at p. 234 [52 L.Ed.2d at p. 283].) While the nonmember employee has the burden of raising an objection to the agency fee, the union bears the burden of proving the validity of the assessment. (*Id.* at pp. 239-241, and fn. 40 [52 L.Ed.2d at pp. 287-288].) Agency fee procedures must be designed to prevent "compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities." (*Id.* at p. 237 [52 L.Ed.2d at p. 285].)

In *Hudson, supra,* 475 U.S. 292, the court outlined the procedural safeguards required to achieve this objective and promulgated a three-part test to be met in collecting agency fees from nonmembers. There must be (1) adequate explanation of the basis for the fee, (2) a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision maker, and (3) an escrow for the amounts reasonably in dispute while a challenge is pending. (*Id.* at p. 310 [89 L.Ed.2d at p. 249].)

PROCEDURAL BACKGROUND

To meet the concerns outlined in *Hudson*, PERB promulgated a series of regulations relating to the collection of agency fees. These regulations became operative April 1, 1989, and form title 8, division 3, chapter 1, subchapter 8 of the California Code of Regulations. Section 32992, "Notification of Nonmember," requires the exclusive representative to send to each nonmember required to pay an agency fee a statement outlining the amount of agency fee, the basis for its calculation, and a procedure for appealing all or part of the fee. (§ 32992, subd. (a).) The calculations are to be based on an independent audit that is to be made available to the nonmembers. (§ 32992, subd. (b).)

Subdivision (c), whose constitutionality is at issue in this appeal, provides: "Such written notice shall be sent/distributed to the nonmember either: [¶] (1) At least 30 days prior to collection of the agency fee, after which the exclusive representative shall place those fees subject to objection in escrow, pursuant to Section 32995 of these regulations; or [¶] *(2) Concurrent with the initial agency fee collection, provided however, that all agency fees so noticed shall be held in escrow in toto until all objectors are identified. Thereafter, only the agency fees for agency fee objectors shall be held in escrow, pursuant to Section 32995 of these regulations.*" (§ 32992, subd. (c), italics added.)

Section 32995, "Escrow of Agency Fees in Dispute," provides: "(a) The exclusive representative shall open an account in any independent financial institution in which to place in escrow either: [¶] (1) Agency fees to be collected from nonmembers who have filed timely agency fee objections . . . ; or [¶] *(2) Agency fees collected from nonmembers receiving concurrent notice with the initial agency fee collection as provided in Section 32992(c)(2) of these regulations.*" (Italics added.) Subdivision (b) of this regulation establishes the procedures for releasing challenged agency fees from escrow. Subdivision (c) provides: "Interest at the prevailing rate shall be paid by the exclusive representative on all rebated fees."

Plaintiffs filed a complaint in superior court asserting, inter alia, these regulations did not comport with *Hudson*. PERB filed an answer disputing plaintiffs' claims. Interveners, labor organizations representing thousands of employees, received permission to intervene in the action. Cross-motions for summary judgment and summary adjudication of issues were filed, with plaintiffs' seeking a declaration that the challenged regulations were unconstitutional and PERB and interveners seeking a declaration of constitutionality.

The trial court rejected most of the challenges to the regulations but found the "concurrent notice with escrow" provisions to be unconstitutional, noting: "The 100 percent escrow contained in the proposed regulations does not

prevent the employee from being deprived [of] the use of a portion of the employee's earnings prior to being given an opportunity to be heard on any objection." The court declared unconstitutional section 32992, subdivision (c)(2) and section 32995, subdivision (a)(2), the two sections authorizing concurrent notice with escrow procedures. Interveners appeal from the ensuing judgment.[2]

## DISCUSSION

■ The sole issue presented in this appeal is one of law, whether the concurrent notice provisions of the adopted regulations comport with *Hudson* requirements. We conclude they do.

In *Hudson*, the court reviewed the union's agency fee procedures to determine whether they met the objective previously enunciated in *Abood*: a "way of preventing compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities." (*Hudson, supra,* 475 U.S. at p. 302 [89 L.Ed.2d at p. 244], quoting *Abood, supra,* 431 U.S. at p. 237 [52 L.Ed.2d at p. 285].)

Previously, in *Ellis v. Railway Clerks* (1984) 466 U.S. 435 [80 L.Ed.2d 428, 104 S.Ct. 1883], the Supreme Court determined that a pure rebate approach did not meet *Abood's* requirements. "By exacting and using full dues, then refunding months later the portion that it was not allowed to exact in the first place, the union effectively charges the employees for activities that are outside the scope of the statutory authorization. . . . [T]he union obtains an involuntary loan for purposes to which the employee objects." (*Id.* at p. 444 [80 L.Ed.2d at p. 439].) The court noted: "The only justification for this union borrowing would be administrative convenience. But there are readily available alternatives, such as advance reduction of dues *and/or interest-bearing escrow accounts,* that place only the slightest additional burden, if any, on the union. Given the existence of acceptable alternatives, the union cannot be allowed to commit dissenters' funds to improper uses even temporarily." (*Ibid.,* italics added)

In reviewing the agency fee procedures in place in *Hudson*, the Supreme Court found three "fundamental flaws." (*Hudson, supra,* 475 U.S. at pp. 304-305 [89 L.Ed.2d at pp. 245-246].) First, the procedures called for a rebate system similar to that condemned in *Ellis*, permitting the dissenters' funds to be used temporarily for improper purposes. (*Id.* at pp. 305-306 [89 L.Ed.2d at pp. 246-247].) Second, nonmembers were given inadequate information

---

[2]PERB is not a party to this appeal.

concerning the basis for the agency fee amount in that the union failed to explain the expenditures for collective bargaining and contract administration. (*Id.* at pp. 306-307 [89 L.Ed.2d at pp. 246-247].) Finally, the court found the union's procedure defective because it did not provide for a reasonably prompt decision by an impartial decisionmaker. (*Id.* at pp. 307-308 [89 L.Ed.2d at pp. 247-248].)

The court then examined procedures since instituted by the union in which 100 percent of the agency fee contributions were placed into escrow. The court noted: "Although the Union's self-imposed remedy eliminates the risk that nonunion employees' contributions may be temporarily used for impermissible purposes, the procedure remains flawed in two respects. It does not provide an adequate explanation for the advance reduction of dues, and it does not provide a reasonably prompt decision by an impartial decisionmaker." (475 U.S. at p. 309 [89 L.Ed.2d at p. 249].)

The court continued: "We need not hold, however, that a 100% escrow is constitutionally required. Such a remedy has the serious defect of depriving the Union of access to some escrowed funds that it is unquestionably entitled to retain. If, for example, the original disclosure by the Union had included a certified public accountant's verified breakdown of expenditures, including some categories that no dissenter could reasonably challenge, there would be no reason to escrow the portion of the nonmember's fees that would be represented by those categories. On the record before us, there is no reason to believe that anything approaching a 100% 'cushion' to cover the possibility of mathematical errors would be constitutionally required." (475 U.S. at p. 310 [89 L.Ed.2d at p. 249], fn. omitted.)

Because two of the three flaws remained even with the 100 percent escrow, the court ruled the union's agency fee procedures did not provide the necessary constitutional protections. (475 U.S. at p. 310 [89 L.Ed.2d at p. 249].) The court concluded "the constitutional requirements for the Union's collection of agency fees include an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." (*Ibid.*)

The application of *Hudson* to the Educational Employment Relations Act (EERA) was discussed in *Cumero v. Public Employment Relations Bd.* (1989) 49 Cal.3d 575 [262 Cal.Rptr. 46 [778 P.2d 174]. In that case, our Supreme Court stated, "The fact that an expenditure of the union is for a purpose beyond its representational obligations and therefore not properly chargeable to nonmember service fees by no means precludes the expenditure altogether. The expenditure may well be an appropriate use of union funds

received from members in the form of fees, dues, or assessments. If so, it may also be financed out of service fees paid by nonmembers who are sufficiently informed of the proposed expenditure and are given an opportunity to object, yet fail to do so." (*Id.* at pp. 589-590.)

The court found the procedures outlined in *Hudson* to be "sufficient and appropriate for protection of nonmember employees' statutory rights to prevent improper use of their service fees collected under an EERA organizational security arrangement." (49 Cal.3d at p. 590.) The court concluded: "[E]ach nonmember has a right to prevent the use of his or her service fee for purposes beyond the union's representational obligations. [This right] must be affirmatively asserted or else it is waived. Accordingly, that right is satisfied if the nonmember is given sufficient information about union expenditures, an opportunity to challenge the amount of his or her financial obligation to the union before an impartial decisionmaker, and protection in the form of an escrow of amounts reasonably in dispute while such challenges are pending, all in accordance with [*Hudson.*]" (*Ibid.*)

The regulations at issue here comport with the requirements of *Hudson* and *Cumero.* Any funds collected under the concurrent notice provision of section 32992, subdivision (c)(2) are placed in an escrow account pending objection by nonmembers. At no time does the union have access to these funds to use them for political, ideological, or other nonrepresentational purposes. Consequently, the evil discussed in *Abood, Ellis,* and *Hudson,* the involuntary subsidization of ideological activity, is not implicated. The funds are placed in escrow, not used for impermissible purposes.[3]

Some lower federal courts have reached the same conclusion. In *Hohe* v. *Casey* (3d Cir. 1989) 868 F.2d 69, the court held: "The First Amendment interest protected by *Hudson's* requirements is the nonmembers' 'interest in not being compelled to subsidize the propagation of political or ideological views that they oppose.' [Citations.] Since the Union has escrowed the entire amount of all fair share fees deducted, from non-challengers as well as challengers, until disposition of the challenges by an impartial arbitrator, this interest is protected." (*Id.* at p. 72.)

Several lower federal courts have faced a similar problem in a slightly different context involving "advanced reduction," in which the courts have considered whether the union must initially reduce the charged agency fee

---

[3]At oral argument, plaintiffs cited two recent federal cases, *Dean* v. *Trans World Airlines, Inc.* (9th Cir. 1991) 924 F.2d 805 and *Dashiell* v. *Montgomery County, Md.* (4th Cir. 1991) 925 F.2d 750. These cases are of minimal relevance as they focus on the problems associated with involuntary subsidies of union activities, a problem that is averted in the instant case by the use of an escrow account.

by an amount reflecting nonrepresentational expenses, or whether the union can charge an agency fee in an amount equal to 100 percent of dues provided the collected fees are placed in escrow pending objection of nonmembers.[4] In *Crawford* v. *Air Line Pilots Ass'n Intern.* (4th Cir. 1989) 870 F.2d 155, the union did not provide for advance reduction of agency fees, but placed 150 percent of its estimated rebate obligation into an interest-bearing escrow account. The court noted *Ellis, supra,* 466 U.S. at page 444 [80 L.Ed.2d at page 439] held that either " 'advance reduction of dues and/or interest-bearing escrow accounts' are acceptable." The *Crawford* court concluded *Hudson* did not "expressly or impliedly overrule *Ellis* with respect to providing an interest-bearing escrow account as an alternative to advance reduction," and rejected the claim that the union's procedures were unconstitutional. (870 F.2d at p. 161.)

An identical conclusion was reached in *Gibson* v. *The Florida Bar* (11th Cir. 1990) 906 F.2d 624, a case in which the United States Supreme Court has granted certiorari. In *Gibson,* the court held *Ellis* and *Hudson* provide "indisputable authority" that an interest-bearing escrow account adequately protects the First Amendment rights of agency fee payers. (*Id.* at p. 631.)

Other courts have reached contrary results. In *Tierney* v. *City of Toledo* (6th Cir. 1987) 824 F.2d 1497 and *Damiano* v. *Matish* (6th Cir. 1987) 830 F.2d 1363 [92 A.L.R. Fed 871], the Sixth Circuit concluded the failure to provide advance reduction of dues violated *Hudson*: "In our view, *Hudson* shows the Supreme Court's intention that, upon a non-member's objection, the union should not deduct any amount, for however short a time, which represents monies clearly expended for ideological purposes. The union simply cannot exact from the dissenter this proportionate amount, and must instead allow him an advance reduction of that part of the union's fee immediately upon objection. We therefore believe that the Supreme Court's approval of 100% escrow as satisfying *Hudson*'s first requirement refers to escrowing 100% of the remaining, non-clearly ideological proportion of the fee which the union may collect." (*Tierney, supra,* 824 F.2d at p. 1504.) The *Tierney* court did not attempt to reconcile this conclusion with the language in *Ellis* authorizing advance reduction *"and/or* interest-bearing escrow accounts." (See *Gillespie* v. *Willard City Bd. of Educ.* (N.D.Ohio 1987) 700 F.Supp. 898, 903-904.)

In *Damiano, supra,* 830 F.2d 1363, the Sixth Circuit followed the reasoning of *Tierney,* further explaining that "because First Amendment rights are

---

[4]We reiterate that the only issue before us in this case is the constitutionality of the concurrent notice provisions of the promulgated regulations. We have no occasion to determine the amount of agency fees a union may properly collect.

implicated, the method of calculating service fees for objecting employees adopted by the union must be narrowly drawn so as to 'minimize both the impingement [upon the objectors' constitutional rights] and the burden [upon the exercise of those rights].' [Citations.]" (*Id.* at p. 1369.) The court found the advanced reduction method to be "clearly a less burdensome method of accommodating non-union employees who do not wish to have service fees used for purposes other than collective bargaining," (*ibid.*) and held "that once a non-union employee properly objects to the use of agency fees, the union is constitutionally required to calculate the service fees of such an employee using the advanced reduction method." (*Id.* at pp. 1369-1370.)

The Ninth Circuit recently followed *Tierney* in *Grunwald* v. *San Bernardino City School Dist.* (9th Cir. 1990) 917 F.2d 1223. However, the court has deferred a ruling on a petition for rehearing en banc in that case pending the Supreme Court's decision in *Gibson, supra.* In *Grunwald*, the court held in a divided opinion that *Hudson* requires the union to deduct "only the amount it is entitled to, i.e., the amount arguably related to its collective bargaining expenses." (*Id.* at p. 1228.) The court concluded the union "must first determine the percentage of union expenses spent on activities unrelated to collective bargaining and then calculate the advance reduction from the nonmembers' dues before it can make any deductions." (*Ibid.*)

In dissent, Judge Kozinski noted that none of the dissenters' money was used for nonrepresentational activities because it had all been placed in an escrow account. "Here, the union uses not a penny for nonrepresentational activities, as 100% of the agency fee is safely tucked away in escrow. Thus, objecting employees do not suffer the injustice of having their money used to advance causes they abhor." (*Grunwald*, 917 F.2d at p. 1231, fn. omitted (dis. opn. of Kozinski, J.).) The dissent noted: "The Court's concern in *Hudson* about *use* of the money for prohibited purposes is not relevant here; no legitimate first amendment interest is violated by the temporary *collection* of the money. Any due process concern is satisfied by the fact that there is an accounting, the opportunity to have the matter resolved by an impartial arbitrator, and the payment of interest (or its equivalent, an advance rebate) to make up for any lost use of the funds." (*Ibid.*, original italics)

We agree. The regulations at issue here protect the First Amendment rights of agency fee payers. As all of their collected funds are placed into an escrow account, the union cannot use this money for an impermissible purpose.

Plaintiffs assert that concurrent collection of agency fees results in the loss of use of their money, thereby implicating their First Amendment

right to use their money for purposes of their own choosing. We quote Judge Kozinski's reply to an identical contention: "If this argument were accepted, every suit for money against a party acting under color of government authority would automatically become a first amendment case. In any event, it is a type of harm that the Court in *Hudson* did not recognize." (*Grunwald, supra,* 917 F.2d at p. 1231 (dis. opn. of Kozinski, J.).) Judge Kozinski discounted dictum in *Seay* v. *McDonnell Douglas Corp.* (9th Cir. 1970) 427 F.2d 996, 1004 that would seem to support plaintiff's claim: "[I]n the two decades that it has been on the books, the *Seay* dictum has never been followed; any precedential effect it may have had has surely been dissipated by the Supreme Court's intervening ruling in *Hudson*." (*Id.* at p. 1231, fn. 3.)

■ We find unpersuasive plaintiffs' claim that because the First Amendment requires narrowly drawn procedures, only advance notice of agency fees can be found constitutional. As one court explained: "[W]e do not believe that *Hudson* stands for the proposition that a union's procedures are constitutionally infirm unless they constitute the least restrictive process imaginable. When the union's plan satisfies the standards established by *Hudson*, the plan should be upheld even if its opponents can put forth some plausible alternative less restrictive of their right not to be coerced to contribute funds to support political activities that they do not wish to support." (*Andrews* v. *Education Ass'n of Cheshire* (2d Cir. 1987) 829 F.2d 335, 340.)

## DISPOSITION

We conclude the "concurrent notice with escrow" provisions of California Code of Regulations, title 8, sections 32992, subdivision (c)(2) and 32995, subdivision (a)(2) comport with *Hudson* and adequately protect the First Amendment and due process rights of agency fee payers. The judgment is reversed, interveners to recover costs on appeal.

Scotland, J., and Nicholson, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 30, 1992.